951 F.2d 613
 139 L.R.R.M. (BNA) 2194, 120 Lab.Cas. P 11,110,
1991-2 Trade Cases P 69,648,
34 Fed. R. Evid. Serv. 1011
 PRECISION PIPING AND INSTRUMENTS, INCORPORATED, a West
Virginia corporation, Plaintiff-Appellant,
v.
E.I. du PONT de NEMOURS AND COMPANY, a Delaware Corporation;
Borg-Warner Specialty Chemicals, Incorporated, a Delaware
Corporation; Murray's Sheet Metal Company, a West Virginia
Corporation; Jack Murray; Monroe Zicherman; William Gray;
Specialty Piping Corporation, a West Virginia Corporation;
Mike Romine; Nitro Industrial Coverings, Incorporated, a
West Virginia Corporation; John A. Martin; Rose Stemple;
Parkersburg-Marietta Contractors, a voluntary association;
John Does, numerous, Defendants-Appellees,
and
Benjamin F. Shaw Company, a Delaware Corporation, Defendant.
 No. 90-1799.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1991.
Decided Dec. 9, 1991.
 
 Edward Anthony Matto, Bricker & Eckler, Columbus, Ohio, argued (Bernadette J. Bollas, Bricker & Eckler, Columbus, Ohio, James M. Sturgeon, Jr., David K. Schwirian, Pauley, Curry, Sturgeon & Vanderford, Charleston, W.Va., on brief), for plaintiff-appellant.
 Gordon Harrison Copland, Steptoe & Johnson, Clarksburg, W.Va., argued, for plaintiff-appellee du Pont.
 Charles M. Love, III, Bowles, Rice, McDavid, Graff & Love, Charleston, W.Va., argued (Paul E. Frampton, on brief), for defendants-appellees Zicherman and Borg-Warner.
 Raymond M. Ripple, Legal Dept., E.I. Du Pont De Nemours & Co., Wilmington, Del., on brief, for defendants-appellees Du Pont and Gray.
 Robert T. Dunlevey, Dunlevey, Mahan & Furry, Dayton, Ohio, Robert W. Full, Goodwin & Goodwin, Parkersburg, W.Va., on brief, for defendants-appellees Romine, Murray, Specialty Piping, Stemple, and Parkersburg-Marietta Contractors Ass'n.
 Before WIDENER and SPROUSE, Circuit Judges, and McMILLAN, Senior District Judge for the Western District of North Carolina, sitting by designation.
 OPINION
 SPROUSE, Circuit Judge:
 
 
 1
 Precision Piping & Instruments, Inc. ("PPI") appeals from the judgment of the district court entered after a directed verdict in favor of defendants, E.I. du Pont de Nemours & Company ("Du Pont"), the Parkersburg-Marietta Contractors Association ("PMCA"), BorgWarner Chemical, Inc. ("Borg-Warner"), and Specialty Piping Corporation ("Specialty"). PPI's suit alleged violations of §§ 1 and 2 of the Sherman Act,[1] the corresponding provisions of the West Virginia Antitrust Act,[2] and tortious interference with business or contractual relations. Finding no error in the rulings of the district court, we affirm.
 
 
 2
 * PPI, a corporation organized in West Virginia in 1984, conducted business primarily as a "pipefitting" contractor for chemical plants in Parkersburg area of West Virginia, also known as the Mid-Ohio Valley ("the Valley"). At the time of the events giving rise to this litigation, Dana B. Beall was the president and sole shareholder of PPI and Dorr E. Hale was its superintendent and chief administrative officer. Soon after its inception, PPI became a member of defendant PMCA, a trade association for unionized construction contractors. Defendants Du Pont and Borg-Warner were both "subscribing" members of PMCA. Subscribing members, unlike the contractors, were not permitted to attend monthly meetings of the PMCA nor were they allowed to vote. By 1986, approximately 74 percent of PPI's work involved contracts with Borg-Warner and Du Pont, two of the largest users of construction services in the Valley.
 
 
 3
 On May 31, 1986, the PMCA's contract with Local 565 of the Plumbers and Pipefitters Union ("Local 565") expired, and Local 565 went on strike. On June 11, the pipefitting contractors assigned their rights to bargain for a new contract to the PMCA for a ninety-day period. The PMCA was initially unsuccessful in reaching an agreement with Local 565. On October 15, 1986, four-and-one-half months after the contract had expired, a PPI representative called Rose Stemple, the executive director of the PMCA who was the person in charge of negotiations, and informed her that PPI was considering bargaining on its own if Stemple's next round of bargaining proved unsuccessful. According to PPI's evidence, Stemple threatened that PPI would be "through in th[e] valley" if it did so. The next day, Du Pont, which had been informed by Stemple of PPI's possible action, threatened PPI that if it bargained outside the PMCA, it would not be "doing any more work in this valley."
 
 
 4
 On November 26, 1986, PPI succeeded in reaching a separate agreement with Local 565. Specialty, a competitor of PPI and a member of the PMCA, called Stemple to relay the news of PPI's separate contract with Local 565. Stemple then contacted Du Pont and BorgWarner, informing them of PPI's action. Thereafter, Du Pont ceased to do business with PPI. In January 1987, Borg-Warner "officially" suspended PPI for ninety days. Borg-Warner told PPI that at the end of that time period, it would consider resuming business relations, but that its decision would be dependent upon PPI's membership status in the PMCA.
 
 
 5
 In late January 1987, Jack Derr, Borg-Warner's vice-president for engineering, drafted a memorandum purporting to explain the reasons for PPI's suspension. The memorandum stated, among other things, that the decision to suspend PPI was made by Monroe Zicherman, manager of construction for central engineering at Borg-Warner, and the purchasing department employees. Zicherman and Borg-Warner employees, David Emerick and Joseph Carrico, each testified, at trial or by deposition, that parts of the document were false and that Emerick alone made the decision to suspend PPI. PPI presented evidence to the effect that the memorandum was drafted in "anticipation of litigation." Borg-Warner now concedes that it contained numerous "misstatements" and was signed by officials of the company "without much consideration."
 
 
 6
 On February 5, 1987, the PMCA membership voted to expel PPI. PPI went out of business in July 1988, while this litigation was pending.
 
 II
 
 7
 PPI sued PMCA, Du Pont, Borg-Warner, Specialty and several other members of the PMCA,[3] alleging (1) a group boycott in violation of § 1 of the Sherman Act; (2) a conspiracy to monopolize in violation of § 2 of the Sherman Act; (3) violations of the West Virginia Antitrust Act; and (4) tortious interference with business or contractual relations.
 
 
 8
 By pretrial order, the district court dismissed PPI's claim for punitive damages on the tortious interference claim. The court also ruled that PPI's allegations of a group boycott required application of a "rule of reason" test rather than a "per se rule." The case proceeded to trial on the remaining issues.
 
 
 9
 During the trial, PPI sought to introduce the testimony of PPI's president, Dana Beall, and superintendent, Bill Hale, to prove the existence of a conspiracy as an element of the antitrust claims. The district court refused the proffer as inadmissible hearsay. It ruled that it did not come under the rubric of Rule 801(d)(2)(D) of the Federal Rules of Evidence, authorizing the admission of statements of employees made within the scope of their employment, or Rule 801(d)(2)(E) as statements of co-conspirators in the furtherance of a conspiracy.
 
 
 10
 At the conclusion of PPI's case-in-chief, the district court, finding insufficient evidence of a conspiracy to submit a claim under either § 1 or § 2 of the Sherman Act to the jury, directed a verdict in favor of all the defendants. PPI appeals. Finding no error in the court's order, we affirm.
 
 III
 
 11
 The propriety of a directed verdict in an antitrust setting is often difficult to determine. This is especially true where a complaint is grounded on allegations that a group boycott has inhibited competition. We think, however, the district court correctly sorted the sometimes confusing principles in determining that PPI did not present sufficient evidence of a conspiracy to have the case submitted to a jury.[4]
 
 
 12
 As stated, the district court excluded as hearsay some putative evidence of an anticompetitive conspiracy. PPI contends that even the remaining evidence was sufficient to frame a jury issue. We think not. Our task in reviewing the directed verdict is to determine whether, "without weighing the evidence or considering the credibility of the witnesses, 'there can be but one conclusion as to the verdict that reasonable jurors could have reached.' " Gairola v. Virginia Dep't of Gen. Serv., 753 F.2d 1281, 1285 (4th Cir.1985) (citations omitted). To find for PPI, it would have been necessary for the jury to conclude both that the defendants possessed a "conscious commitment to a common scheme designed to achieve an unlawful objective," and that the evidence tended to exclude the possibility that defendants acted independently. Laurel Sand & Gravel, Inc. 924 F.2d 539, 543 (4th Cir.1991) (citing Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984)). Moreover, the Supreme Court has cautioned that "[c]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust...." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). PPI, in other words, must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed it. See also Stephen Jay Photography, Ltd. v. Olan Mills, Inc., 903 F.2d 988, 994 (4th Cir.1990).
 
 
 13
 PPI simply did not carry the initial burden of creating a sufficient factual issue as to the existence of a conspiracy. There was ample provocation for PMCA's actions and for the independent actions of Borg-Warner, Du Pont, and Specialty which had nothing to do with competition in the antitrust sense. In breaking away from the multiemployer bargaining unit, PPI violated the PMCA bylaws which proscribed such action, and hindered the ongoing bargaining process between PMCA and Local 565. The testimony reveals that the decisions to stop doing business with PPI were in direct response to PPI's actions and in accordance with both Borg-Warner's and Du Pont's independently articulated, pre-existing policies of not doing business with contractors that undermine local multiemployer negotiations. Moreover, the Borg-Warner communications were about matters in which it possessed an obvious self-interest wholly apart from any competitive animus it might have had toward PPI: the negotiations with the union. PPI's evidence against Specialty and Du Pont is similarly lacking. The fact that L. Michael Romine, the sole owner and CEO of Specialty, notified Stemple when he learned that PPI had bargained on its own, and had spoken at a PMCA meeting in favor of expelling PPI, does not create an inference of an anti-competitive or monopoly conspiracy, in light of the strenuous collective bargaining that had existed prior to the events giving rise to this lawsuit.
 
 
 14
 Lastly, PPI has failed to present evidence sufficient to support its contention that a conscious scheme was created by PMCA in which all defendants acquiesced. See National Marine Elec. Distrib., Inc. v. Raytheon Co., 778 F.2d 190, 192 (4th Cir.1985) (though threats may have "played a part" in the termination of distributor, such threats were insufficient to raise inference of conspiracy). Since there is no evidence that any one of the defendants was influenced in its decision by the acts of any other defendant, PPI has failed to exclude the possibility of independent action. See Matsushita, 475 U.S. at 588, 106 S.Ct. at 1356; Monsanto, 465 U.S. at 764, 104 S.Ct. at 1471; Kreuzer v. American Academy of Periodontology, 735 F.2d 1479, 1488-89 (D.C.Cir.1984); Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia, 624 F.2d 476, 479 (4th Cir.1980), cert. denied, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981).
 
 
 15
 Because PPI's evidence was insufficient to give rise to an inference of conspiracy, the directed verdict on the Sherman Act claims was proper.
 
 IV
 
 16
 PPI contends, nevertheless, that had the district court not improperly excluded the statements of Beall and Hale, there would have been sufficient evidence to withstand the court's directed verdict. PPI's argument fails because we are persuaded that the district court did not abuse its discretion in excluding the proffered evidence as hearsay. Although the defendants argued that even if admissible, the statements could not be proven, PPI sought to prove the existence of a conspiracy as follows:
 
 PPI president Beall would testify that:
 
 17
 Jerry Marks told him and Bill Hale that Jerry Marks had been receiving telephone call[s] from Rose Stemple [in] which Rose Stemple was urging Jerry Marks in his position as the secondary delegate to the PMCA to take action against PPI and throw them out of the Borg-Warner plant.... That Jerry Marks informed them, that is Dana Beall and Bill Hale, that he did not favor expelling them from the plant, and for them not to worry about it at that time.
 
 PPI Superintendent Hale would testify that:
 
 18
 he called Mr. Emerick, that Mr. Emerick told him that the purchase orders of PPI were being cut off; that the decision had been made by Mr. Zicherman ...--the next part was that Mr. Zicherman made--Mr. Zicherman related that this was done after conversation with Rose Stemple of the Parkersburg-Marietta Contractors Association. The next part of the conversation was that PPI was out of the plant permanently. The next part of the conversation was that PPI, in spite of a request by Mr. Hale to Mr. Emerick, would not be given any meeting in which to discuss this issue with Monroe Zicherman, David Emerick or anybody else at Borg-Warner management.
 
 
 19
 * Rule 801(d)(2)(D) of the Federal Rules of Evidence provides:
 
 
 20
 A statement is not hearsay if-- ... (2) ... The statement is offered against a party and is ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship....
 
 
 21
 The district court, ruling from the bench, noted that the statements were inadmissible because they were "beyond the authority or agency or de facto actions of that particular person who is speaking." In its written order, incorporating the bench ruling, the court reiterated its view that the statements were inadmissible hearsay. Referring to Fed.R.Evid. 801(d)(2)(D), the court opined that "the Plaintiff failed to show that the alleged statements concerned matters within the scope of the agency or employment of each declarant making the alleged statement, thus precluding the application of that rule."
 
 
 22
 The court found that although Marks was responsible for many engineering matters at Borg-Warner and had the power to influence decisions through his recommendations, he had no actual authority to hire, fire, or suspend contractors such as PPI. It also found that although Emerick had the authority to hire and fire contractors, his declarations, sought to be introduced by PPI were only restatements of what Zicherman had said. It further found that there was no evidence indicating that Zicherman had the authority to make decisions as to PPI and that there was no evidence that Emerick had the authority to speak on behalf of Zicherman.[5] Thus, Beall's testimony regarding Emerick's statements about Zicherman's statements amounted to multiple hearsay because it could not be shown that each part of the combined statements came within an exception to the hearsay rule or under one of the definitions of "nonhearsay."[6]
 
 
 23
 PPI argues that, unlike Rule 801(d)(2)(C), 801(d)(2)(D) does not require evidence of "authority" as was required here by the district court. Rather, PPI urges that under the rule, it need only show that the proffered statements concern "a matter within the scope of the agency or employment," as distinguished from direct decision-making authority. It contends that Marks's statements concern matters within the scope of his employment because: (1) Marks was specifically assigned by Borg-Warner as a representative to the PMCA; (2) Marks, as supervisor of PPI's construction work, had to relay information to PPI relevant to its work in the plant; and (3) statements concerning PPI's expulsion were within the scope of Marks's work responsibilities.
 
 
 24
 Similarly, PPI contends that Emerick's statements are admissible under Rule 801(d)(2)(D), because "four of the five" statements by Emerick were not recitations of what Zicherman had said but statements by Emerick concerning matters within the scope of Emerick's employment. In addition, it argues that Zicherman's statements fall squarely within Rule 801(d)(2)(D) as matters within the scope of his employment, since he could recommend who received contracts and had "significant input" in this area.
 
 
 25
 We review not only the district court's ruling concerning the scope of Rule 801(d)(2)(D), but also its application to these factual circumstances. The first we review de novo. See Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). As to the application of the rule, our inquiry is limited to the question of whether the district court abused its discretion. See Morgan v. Foretich, 846 F.2d 941, 945 (4th Cir.1988); Carden v. Westinghouse Elec. Corp, 850 F.2d 996, 1003 (3rd Cir.1988). We cannot say the district court erred in either respect.
 
 
 26
 "Authority" as it is used in Fed.R.Evid. 801(d)(2)(C) should be distinguished from its use by the district court here in applying Rule 801(d)(2)(D). In the former, a statement is not hearsay if it is offered against a party and is "a statement by a person authorized by the party to make a statement concerning the subject." Thus, authority in the context of 801(d)(2)(C) means "authority to speak" on a particular subject on behalf of someone else.
 
 
 27
 Although the district court used the word "authority" in describing Rule 801(d)(2)(D), in the context of its ruling, it obviously referred to the scope of employment as compared to the specific authority to speak. See United States v. Portsmouth Paving Corp., 694 F.2d 312, 321 (4th Cir.1982) ("independent evidence establishing the existence of the agency must be adduced, but specific authorization to speak need not be shown.") Here, we are in agreement with the district court that the relevant question is whether Marks and Zicherman had the authority to hire and fire PPI. If not, statements concerning PPI's contracts with Borg-Warner were made outside the scope of their employment.
 
 
 28
 Our holding in Cline v. Roadway Express, Inc., 689 F.2d 481 (4th Cir.1982), is instructive. In Cline, an age discrimination case, this court considered a witness's testimony that persons at a managers meeting had referred to a company policy replacing older workers with younger, better educated ones. The district court admitted the evidence under Rule 801(d)(2)(D), and we affirmed. Unlike the circumstances here, however, the managers in Cline had the specific authority to hire and fire workers. There is no evidence that Marks possessed similar actual or apparent authority.
 
 
 29
 In Portsmouth Paving, supra, we affirmed the admission of testimony under Rule 801(d)(2)(D) concerning statements by a secretary as to what her boss said to her via car radio. Although the secretary admittedly did not have the specific responsibility or authority for the decision in issue, we found significant the fact that she did have the responsibility and authority to relay messages, in that case, to the testifying witness. In contrast, here Marks not only had no actual or apparent authority to hire or fire contractors, but his authority did not extend to relaying messages to contractors regarding policies of Borg-Warner.
 
 
 30
 Turning to Hale's proffered testimony concerning Emerick's statements, the district court concluded that the proffered statements by Emerick were merely recitations of what Zicherman had said. Even if Emerick had the authority to relay Zicherman's statements, the statements would not get past the hearsay barrier because Zicherman's remarks were not made within the scope of his employment. More troublesome is the fact that Emerick had the ultimate responsibility for suspending PPI. Thus, if he, as the declarant, had related information about his actions suspending PPI, they clearly would have been within the scope of his employment. Instead, he was relating a statement about an apparent unauthorized action by Zicherman. An obvious inference is that Emerick approved and we, as was the district court, are presented with a nice technical evidentiary question. It is in such trial settings, however, where the discretion of trial courts in administering evidentiary rules is designed to reach optimum utility in their truth-finding roles. As stated in Boren v. Sable, 887 F.2d 1032, 1036 (10th Cir.1989):
 
 
 31
 Certainly, the trial judge has discretion under Rule 403 to exclude a statement of multiple hearsay, even if each included portion meets the requirements of an exception, when he finds the statement so unreliable that its probative value is substantially outweighed by the danger of prejudice and confusion.
 
 
 32
 (quoting 4 J. Weinstein & M. Berger, Weinstein's Evidence, p 805 (1990)).
 
 
 33
 Here, both Emerick and Zicherman were not only available but testified and were cross-examined to some length. True, they were, as to PPI, hostile witnesses. On the other hand, Beall, one of the PPI witnesses who would have related the hearsay statements, was the real plaintiff in interest and the other, Hale, was his principal manager. Under all the trial circumstances, the question of the propriety vel non of the district court's exercise of discretion is a close one. Had the district court ruled the statements admissible we would be hard put to fault that exercise of discretion. Rule 805 allows hearsay within hearsay, and we have previously extended the rule to include admissions within hearsay, see Portsmouth Paving, 694 F.2d at 321. We are, however, equally hard put to fault the court's exercise of discretion in excluding the testimony. Apart from the question of reliability, the proffered statements and the circumstances under which they purportedly were made are confusing and the inevitable arguing of possible inferences from them obviously could have resulted in untoward prejudice. The bottom line is that we likewise affirm the exclusion of the proffered statements as within the discretion of the district court.
 
 B
 
 34
 Neither can we conclude that the district court erred in ruling that the proffered testimony was inadmissible under Fed.R.Evid. 801(d)(2)(E). The party proffering statements as nonhearsay under Rule 801(d)(2)(E), must demonstrate the existence of a conspiracy and that the statements were made in the course of and in furtherance of that conspiracy. United States v. Jackson, 863 F.2d 1168, 1171 (4th Cir.1989). Prior to admitting the statements, the trial court must make the preliminary factual determinations relevant to Rule 801(d)(2)(E). See Fed.R.Evid. 104(a).[7] See also Bourjaily, 483 U.S. at 181, 107 S.Ct. at 2781. In Bourjaily, the Supreme Court held that a trial court may properly consider hearsay statements in making its preliminary determination of whether a conspiracy exists and whether the statement at issue was made during the course and in furtherance of the conspiracy. Its preliminary finding will not be disturbed on appeal unless it is clearly erroneous. Bourjaily, 483 U.S. at 181, 107 S.Ct. at 2782. The Supreme Court also said that "the judge should receive the evidence and give it such weight as his judgment and experience counsel." Id. (citation omitted). It advised that "[e]ven if out-of-court declarations by co-conspirators are presumptively unreliable, trial courts must be permitted to evaluate these statements for their evidentiary worth as revealed by the particular circumstances of the case." Id. at 180, 107 S.Ct. at 2781. See also Jackson, 863 F.2d at 1172; United States v. Leavis, 853 F.2d 215, 220 (4th Cir.1988).
 
 
 35
 Here, the district court found that PPI failed to make the required preliminary showing of a conspiracy. It considered the proffered statements and determined that they were "particularly unreliable, in view of the entire development of the case, the demeanor of the witnesses, the unavailability of some declarants, the failure to question other declarants regarding the statements and the lack of adequate independent corroborating evidence."
 
 
 36
 PPI argues that the district court improperly made credibility determinations and drew inferences against it in considering the directed verdict. In our view, PPI confuses the standards of review. Certainly, a trial court may not make factual determinations or draw inferences against the nonmoving party when ruling on a motion for a directed verdict. See Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc., 891 F.2d 1127, 1140 (4th Cir.1989), rev'd on other grounds, --- U.S. ----, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). However, the trial court may weigh the credibility and reliability of evidence, including hearsay statements, when making a preliminary determination as to the existence of a conspiracy necessary to invoke Rule 801(d)(2)(E). In making such a determination, the court is not bound by the rules of evidence. Fed.R.Evid. 104(a).
 
 
 37
 PPI failed to carry the preliminary burden of showing there was a conspiracy. We are persuaded that the district court's factual findings were not clearly erroneous and that it did not abuse its discretion in ultimately excluding the proffered testimony as inadmissible hearsay.
 
 V
 
 38
 To state a claim of tortious interference with business or contractual relations under West Virginia law, a plaintiff must show the existence of a business relationship, intentional interference by a party outside that relationship, causation, and damages. See Torbett v. Wheeling Dollar Sav. & Trust Co., 173 W.Va. 210, 314 S.E.2d 166, 173 (1983). The district court concluded that PPI did not make out a sufficient case to go to the jury since evidence showed that the defendants acted independently.[8] For each business relationship involved in the case, there was no intentional interference by a party outside that relationship. The independent actions were intended to effect only the business relationship to which the actor was a party. Moreover,
 
 
 39
 [d]efendants are not liable for interference that is negligent rather than intentional, or if they show defenses of legitimate competition between plaintiff and themselves, their financial interest in the induced party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors that show the interference was proper.
 
 
 40
 Torbett, 314 S.E.2d at 167. We agree that PPI did not present sufficient evidence upon which a reasonable jury could have concluded that whatever interference resulted from defendants' actions resulted from other than legitimate competition.
 
 
 41
 In view of the above, the judgment of the district court is affirmed in its entirety.
 
 
 42
 AFFIRMED.
 
 
 43
 McMILLAN, Senior District Judge, concurring:
 
 
 44
 Although I believe the statements of the witness Jerry Marks were admissible as non-hearsay under Rules 801(d)(2)(D) and 801(d)(2)(E), they could have been excluded, correctly, under Rule 403. Since the result is correct under Rule 403, I don't see where the error, if any, is harmful. I therefore concur in the result.
 
 
 
 [1]
 15 U.S.C. §§ 1 and 2, provides in part:
 § 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal;
 § 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or person, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.
 
 
 [2]
 W.Va.Code § 47-18-1, et seq. (1986). The state antitrust claim was not raised on appeal
 
 
 [3]
 On the eve of trial, in exchange for a waiver of costs and fees, PPI dismissed all defendants except PMCA, Du Pont, Borg-Warner, and Specialty
 
 
 [4]
 Since we affirm the district court's ruling on the conspiracy issue it is unnecessary to reach the questions concerning the effect of the defendants' actions on competition. We think, however, the district court was correct in holding that the issue would have been resolved under a "rule of reason" analysis. It is true that in some circumstances a group boycott may be considered a per se violation of § 1 of the Sherman Act. E.g., FTC v. Superior Court Trial Lawyers Ass'n, 493 U.S. 411, 110 S.Ct. 768, 107 L.Ed.2d 851 (1990) (boycott merely a mechanism to enforce a horizontal price-fixing conspiracy). We are persuaded, however, that the circumstances here are akin to those in Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co., 472 U.S. 284, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985). There, the Supreme Court recognized that, in certain circumstances, group boycotts may be deemed per se violative of § 1 of the Act. Id. at 294, 105 S.Ct. at 2619. However, the expulsion from a trade organization did "not necessarily imply anticompetitive animus and thereby raise a probability of anticompetitive effect," Id. at 296, 105 S.Ct. at 2620, because certain rules are necessary to the effective functioning of such an organization and may even promote competition. Only where the organization "possesses market power or exclusive access to an element essential to effective competition" will a per se finding of anticompetition be appropriate. Id
 
 
 [5]
 The court referred to Fed.R.Evid. 801(d)(2)(D) in support of this point. However, 801(d)(2)(C) is more relevant since it states that a statement is not hearsay if it is made "by a person authorized by the party to make a statement concerning the subject...."
 
 
 [6]
 Fed.R.Evid. 805 states:
 Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.
 
 
 [7]
 Fed.R.Evid. 104(a) states:
 Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b) [relevancy conditioned on fact]. In making its determination it is not bound by the rules of evidence except those with respect to privileges.
 
 
 [8]
 The court also noted that PPI apparently abandoned this cause of action and that, when the federal claim failed, the court lost jurisdiction over this pendant state law claim