Donna PARKER, Plaintiff,

v.

Richard DANZIG, Defendant.

No. 00-CV-412.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 30, 2001.

J. Gray Lawrence, Jr., Faggert & Frieden, P.C., Chesapeake, VA, for Plaintiff.

Anita Kay Henry, United States Attorney's Office, Norfolk, VA, for Defendant.

### OPINION AND ORDER

FRIEDMAN, District Judge.

Plaintiff brings this sex discrimination action against the United States Navy pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981a. Plaintiff, who is female, alleges that the Defendant discriminated against her on the basis of her sex when, following a reduction in force ("RIF"), it failed to recall her to in-pay status as a Grade–10 pipefitter at the Norfolk Naval Shipyard ("NNS") on two occasions, the first of which was in November 1993 and the second in July 1994. Plaintiff also alleges that the Defendant failed to recall

her in retaliation for her previously having engaged in protected employment activity by filing charges of sex discrimination against a supervisor. The Defendant has moved for summary judgment with respect to both of these claims.

## I. Factual Background

In 1973, Ms. Parker served six months in the United States Navy. She began working as a pipefitter in 1980 with Newport News Shipbuilding. In March 1992, Ms. Parker was hired as a permanent Pipefitter Mechanic, WG–4204–10 ("Grade 10"), in Shop 56 at the NNS in Portsmouth, Virginia. The NNS also employed Grade 8 pipefitters, who are less skilled, less experienced, and less well paid than Grade 10 pipefitters. Upon being hired at NNS, Ms. Parker was issued a badge with the badge number 056–067407. At all times relevant to this litigation, James Shoemaker was the shop superintendent for Shop 56.

Almost immediately after beginning work at the NNS, Ms. Parker's general foreman, James Motley, began sexually harassing her. In November or December 1992, Ms. Parker sought equal employment opportunity ("EEO") counseling concerning this harassment. Ms. Parker alleges that the EEO office at the NNS refused to process her charges unless and until the filing of those charges had been approved by Mr. Shoemaker.[1] On or about May 11, 1993, Plaintiff filed a formal charge of sexual harassment against the

Navy alleging that she suffered unlawful employment discrimination in violation of Title VII from March through December 1992 due to Mr. Motley's conduct at the NNS.[2] Although the Navy originally concluded that Ms. Parker's allegations failed to establish a *prima facie* case of sexual harassment, the Equal Employment Opportunity Commission ("EEOC"), on appeal, found Ms. Parker's claims to be meritorious. *See PARKER v. DANZIG*, 2000 WL 1532087 (E.E.O.C. Oct. 4, 2000).

Mr. Shoemaker maintains that, after becoming aware that Ms. Parker had made an informal claim of sexual harassment against Mr. Motley, he attempted to protect Ms. Parker. Mr. Shoemaker told Mr. Motley that he faced possible demotion due to the harassment claims leveled against him by Ms. Parker and another female worker at Shop 56, Kathy Weeks. Following this conversation, Mr. Motley retired from Shop 56 in late 1992. Mr. Shoemaker further responded to Ms. Parker's and Ms. Weeks' harassment claims by "isolating" both women through reassignment to the Southgate Annex of Shop 56, which Ms. Parker describes as the "small little cubby area where I wasn't allowed to leave."

In or about December 1992, the NNS underwent a RIF that affected Shop 56. Sometime in September 1993, the Plaintiff was placed into on-call, non-pay status. Thus, although Ms. Parker essentially was out of work, she was eligible for recall by Shop 56. Ms. Parker testified in deposi-

---

**1.** Patricia C. Hill, the current EEO Complaints Manager at the NNS, has submitted an affidavit in which she explains that the EEO officer with whom Ms. Parker met, who is no longer employed at the NNS, suggested that Ms. Parker meet with Mr. Shoemaker to discuss her charges of sexual harassment and that she advise the EEO officer of the outcome of the meeting. Ms. Hill maintains that there is no requirement at NNS that an em-

ployee receive her supervisor's approval prior to initiating an EEO complaint.

**2.** One of Ms. Parker's female co-workers, Kathy Weeks, also endured Mr. Motley's sexual harassment. She too filed a discrimination claim with EEOC, which the Navy found to be meritorious. *See Weeks v. Department of the Navy*, DON No. 93–00181–012 (Sept. 1995).

tion that when she was placed on non-pay status, John Hines, who was a staffing and classification specialist at the Human Resource Office at NNS, advised her that she would be recalled to work in November or December 1993. Mr. Hines denies that he ever told Ms. Parker that she would be recalled.

Due to the RIF and periodic changes in Shop 56's workload, there were indeed periods during which Shop 56 had insufficient personnel. Accordingly, on certain occasions the NNS recalled on-call and temporary employees to augment the workforce at Shop 56. Mr. Shoemaker possessed the sole authority to devise the methodology and criterion by which on-call and temporary employees would be recalled. Mr. Shoemaker decided that the following two-step methodology would be used to identify the pipefitter personnel who would be recalled. First, Mr. Shoemaker would determine the number of Grade 8 and Grade 10 pipefitters who would be required to accomplish pending job functions. Second, with respect to Grade 10 pipefitters, Mr. Shoemaker would identify the particular employees to be recalled based on their comparative badge numbers, with employees possessing lower badge numbers preferred over those with higher badge numbers. Mr. Shoemaker avers that he decided to recall Grade 10 pipefitters based upon relative badge numbers because (1) lower badge numbers corresponded with lengthier periods of employment at NNS, and (2) an employee's badge number generally reflected that employee's level of experience, skill, and ability, which were the most important considerations in determining who should be recalled.

Mr. Shoemaker, in his sole discretion, made the considered decision not to seek a determination of seniority from the NNS Human Resources Department with respect to individuals in the pool of prospective recall employees. Mr. Shoemaker felt that any computation of seniority by the Human Resources Department would have been too complicated because it would have involved considering each employee's prior performance ratings and any applicable veteran's preference.[3]

The alleged acts of sex discrimination and retaliation that form the basis of the instant suit are related to two recalls, the first of which occurred in November 1993 and the second in July 1994. The Defendant maintains that Ms. Parker was not selected for recall on either of these occasions because her badge number was too high to merit recall in light of the number of available spots. Each of the three Grade–10 pipefitters recalled in November 1993 were male and each had a lower badge number than the Plaintiff. In July 1994, seven Grade–10 pipefitters were recalled. Again, each of these recalled employees were male and each possessed a badge number lower than that of Ms. Parker. In both November 1993 and July 1994, several Grade 8 pipefitters were recalled in addition to these Grade 10 pipefitters.

Plaintiff alleges that she was told by Harvey Whitney, Donny Hudson, and Hughes Bunch, all male NNS managers or foremen, that Mr. Shoemaker would not recall the Plaintiff because she had filed sexual harassment charges against Mr. Motley and because, prior to Ms. Parker's arrival at NNS, Shop 56 had been free of problems. Ms. Parker alleges that Mr. Shoemaker exercised his sole discretion to

---

**3.** Plaintiff's alleges that, due to her brief time in the Navy, she would have been entitled to a veteran's preference.

determine the number and category of employees to be recalled in such a way as to avoid recalling her. Ms. Parker also asserts that there are discrepancies between the number of Grade 10 pipefitters that Mr. Shoemaker now attests that he recalled and the number he stated that he had recalled in an affidavit that he executed on April 13, 1995. Finally, Ms. Parker contends that Mr. Shoemaker demonstrated animus against her when he failed to protect her following an attack against her by a fellow employee.

## II. Discussion

The Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) on the following two grounds. First, with respect to Plaintiff's sex discrimination claim, Defendant argues that Plaintiff has failed to produce sufficient evidence to demonstrate that the Navy's offered nondiscriminatory business reason for declining to recall the Plaintiff on the two occasions at issue was pretextual and that the actual reason was discrimination based on Plaintiff's sex. Second, with respect to Plaintiff's retaliation claim, Defendant argues that Plaintiff cannot demonstrate a causal connection between the Navy's decision not to recall her and her prior charges of sexual harassment related to the conduct of Mr. Motley.

Summary judgment is appropriate only when it is apparent from the entire record, viewed in light most favorable to the nonmoving party, that there are no genuine disputes of material fact. *See, e.g., Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). It is appropriate to decline to grant summary judgment where there is sufficient evidence favoring the nonmoving party which would allow a reasonable jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A properly supported motion for summary judgment, however, may not be defeated by "the mere existence of some alleged factual dispute between the parties." *Id.* at 247–48, 106 S.Ct. 2505.

### A. Ms. Parker's Sex Discrimination Claim

Section 703 of Title VII of the Civil Rights Act of 1964, *inter alia*, makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1). As an initial matter, the Court must determine whether the Plaintiff has set forth a "mixed-motive" discrimination case. If not, then Ms. Parker's sex discrimination claims are properly analyzed under the familiar *McDonnell Douglas* three-step framework applicable to "claims that are based principally on circumstantial evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although the parties appear to be in agreement that this is a case involving circumstantial, rather than direct, evidence of discrimination, certain portions of Plaintiff's opposition brief appear to characterize this matter as a mixed-motives case. To avoid any confusion as to the Court's disposition of the present motion, the Court shall address this threshold issue of the appropriate analytical framework applicable to Plaintiff's

claims in the context of a motion for summary judgment.

### 1. Mixed–Motive Versus Pretext

■ "Employment discrimination law recognizes an important distinction between mixed-motive and pretext cases." *Fuller v. Phipps*, 67 F.3d 1137, 1141 (4th Cir.1995). In pretext cases, the plaintiff seeks to prove that the defendant's proffered non-discriminatory reason for an adverse employment action was, in reality, a pretext for an illegally motivated, discriminatory decision. *Id.* Pretext cases involve circumstantial evidence of discrimination and are analyzed under the *McDonnell Douglas* framework.

"By contrast, if plaintiffs can present sufficiently direct evidence of discrimination, they qualify for the more advantageous standards of liability applicable in mixed-motive cases." *Id.* Under the Supreme Court's original test applicable to mixed-motive cases, if a plaintiff satisfied the evidentiary threshold necessary to obtain mixed-motive treatment, the burden of persuasion shifted to the defendant to demonstrate that it would have reached the same decision absent any discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The Civil Rights Act of 1991, however, modified the *Price Waterhouse* analysis to make it more favorable to plaintiffs. Thus, in mixed-motive cases, "an employer can no longer avoid liability by proving that it would have made the same decision for nondiscriminatory reasons." *Fuller*, 67 F.3d at 1142. Rather, liability under Title VII now attaches whenever sex "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m); *Fuller*, 67 F.3d at 1142 ("employers now violate the Act when [sex] plays an actual role in an employ-

ment decision, regardless of other considerations that may independently explain the outcome").

To benefit from the mixed-motive standard, however, a plaintiff must present, as a threshold matter, "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion." *Fuller*, 67 F.3d at 1142, *quoting Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775. "Not all evidence that is probative of discrimination will entitle the plaintiff to a [mixed-motive] charge." *Id., quoting Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 181 (2d Cir.1992). "Otherwise, any plaintiff who is able to establish a prima facie showing in a pretext case would qualify for a mixed-motive instruction, conflating the two categories of cases and subverting the Supreme Court's efforts to distinguish the two theories." *Id.*

The Court finds that Plaintiff has failed to offer sufficient evidence demonstrating direct discrimination on the part of the Navy to justify application of the mixed-motive standard. Plaintiff has not offered any direct evidence that the Navy's decision not to recall her was motivated by sex discrimination. Rather, Plaintiff relies on circumstantial evidence, such as the undisputed fact that the Navy recalled only male Grade 10 pipefitters on both of the occasions at issue, to support her sex discrimination claim. Accordingly, this case is a classic example of a pretext case which is appropriately analyzed under the *McDonnell Douglas* framework.

### 2. The *McDonnell Douglas* Analysis

*McDonnell Douglas* and subsequent decisions have "established an allocation of the burden of production and an order for the presentation of proof in … discriminatory-treatment cases." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First,

"the plaintiff must establish a prima facie case of discrimination." *Reeves,* 120 S.Ct at 2106; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff succeeds in doing so, "the plaintiff creates a rebuttable presumption that the employer has unlawfully discriminated against [her]." *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993).

The burden then shifts to the defendant to "produc[e] evidence that plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves,* 120 S.Ct. at 2106, *quoting St. Mary's,* 509 U.S. at 509, 113 S.Ct. 2742. In other words, at this second stage in the *McDonnell Douglas* analysis, "[t]he employer is not required to prove absence of discriminatory motive, but merely to articulate some legitimate reason for its action." *Cook,* 988 F.2d at 511.

Finally, if the defendant carries its burden of articulating a legitimate, nondiscriminatory reason for its employment decision, then the presumption of discrimination falls away and the burden again shifts to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. "This burden merges with the plaintiff's ultimate burden of persuasion on the motivational issue." *Cook,* 988 F.2d at 511. The Supreme Court recently clarified that "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation" because "once the employer's justification has been eliminated, discrimination may

well be the most likely alternative explanation." *Reeves,* 120 S.Ct. at 2108–09. Therefore, "a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability." *Id.* at 2109.

Plaintiff has successfully set forth a *prima facie* claim of sex discrimination. To establish a *prima facie* case of disparate treatment in a pretext case, Plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was not recalled; and (4) other employees who are not members of the protected class were recalled under circumstances giving rise to the inference of discrimination. *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 760 (4th Cir.1998); *Hughes v. Bedsole,* 48 F.3d 1376 (4th Cir.1995). Plaintiff is female, and thus protected under Title VII; there is no dispute that she was qualified as a Grade 10 pipefitter; it is not disputed that the Navy declined to recall her on both occasions at issue; and, finally, only male Grade 10 pipefitters actually were recalled on both occasions.

■■ The Defendant's arguments that the Plaintiff has failed to establish the third and fourth elements of a *prima facie* case of sex discrimination are meritless. The Navy contends that Ms. Parker has failed with respect to the third element because she has not established that she was *better* qualified than the Grade 10 pipefitters who were recalled. This simply is not the requirement—Plaintiff need only establish that she was qualified, not that she was better qualified than those who were recalled. The Navy also makes the conclusory argument that Ms. Parker failed to establish the fourth element of a *prima facie* case because she was not rejected for a recall position under circumstances that give rise to an inference of discrimination. In light of the fact, howev-

er, that no female Grade 10 pipefitters were recalled by the Navy on either occasion, there exists a reasonable basis from which to infer unlawful discrimination.

■ Therefore, under the *McDonnell Douglas* framework, the burden appropriately shifts to the Navy to produce a legitimate, non-discriminatory reason for its decision not to recall Ms. Parker. The Navy argues that Mr. Shoemaker selected the Grade 10 pipefitters who would be recalled solely on the basis of lower NNS badge numbers, which he felt reflected the relative experience, skills, and ability of the pipefitters subject to recall. Because the Defendant's burden is merely one of production, the Navy's explanation with respect to its decision not to recall Ms. Parker is adequate to shift the burden back to the Plaintiff to produce sufficient evidence to permit a reasonable jury to find that this offered explanation is merely a pretext for the Defendant's actual, discriminatory motive.

Plaintiff offers the following evidence in support of her argument that the badge number methodology devised by Mr. Shoemaker is merely pretextual: (1) Plaintiff's recollection of statements made to her by male co-workers, Messrs. Whitney, Hudson, and Bunch, to the effect she was not wanted back at the NNS because of her sexual harassment charges leveled at Mr. Motley; (2) animus on the part of Mr. Shoemaker against the Plaintiff as demonstrated by his alleged failure to protect the Plaintiff after she was attacked by a co-worker; (3) discrepancies between Mr. Shoemaker's affidavit in support of the instant motion and his April 1995 affidavit with respect to the number of pipefitters that were recalled; and (4) a document that Plaintiff contends demonstrates that pipefitters hired after the Plaintiff actually had lower badge numbers than the Plaintiff. For the reasons discussed below, this

evidence, even with all inferences therefrom drawn in favor of the Plaintiff, is insufficient to defeat Defendant's summary judgment motion.

### a. Alleged Statements by Messrs. Whitney, Hudson, and Bunch

■ In her deposition, Ms. Parker testified that she had been told by Harvey Whitney, Donny Hudson, and Hughes Bunch that Mr. Shoemaker would not recall her because she had filed sexual harassment charges against Mr. Motley and because there were not any problems with the shipyard family until she began working there. Ms. Parker alleges that each of these men held management positions at Shop 56. Plaintiff argues that these statements demonstrate that Mr. Shoemaker's system for recalling Grade 10 pipefitters based upon their relative badge numbers was merely a pretext for his actual motivation, which was to discriminate against the Plaintiff on the basis of her gender and in retaliation for her earlier claims of sex discrimination.

Mr. Hudson was Ms. Parker's general foreman, also known as "zone manager," in Shop 56. Mr. Whitney retired from the NNS on September 30, 1995, but the record does not indicate what his position was at the NNS during the relevant time periods. Personnel records establish that Mr. Bunch retired from the NNS on May 3, 1993, which was before Ms. Parker went into non-pay status on September 27, 1993. Therefore, Mr. Bunch was not employed at the NNS during the period in which Ms. Parker was subject to recall.

■ Ms. Parker's recollection of statements purportedly made to her by Messrs. Whitney, Hudson, and Bunch cannot defeat Defendant's motion for summary judgment because the statements are inadmissible hearsay. *Johnson v. Runyon*, 928 F.Supp. 575, 585 (D.Md.1996) ("inad-

missible hearsay evidence . . ., as a matter of law, cannot create a factual dispute"), *citing Greensboro Professional Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir.1995). Plaintiff has not offered affidavits executed by these individuals or their deposition testimony in which they acknowledge having made the statements Plaintiff attributes to them.[4] Therefore, it appears that, if this case went to trial, Ms. Parker would attempt to introduce these statements through her own testimony by arguing that these statements are nonhearsay as admissions by a party-opponent pursuant to Federal Rule of Evidence ("FRE") 801(d)(2)(D). During oral argument, Plaintiff's counsel conceded that the admissibility of Plaintiff's testimony regarding these statements would pose a "problem." Unfortunately for the Plaintiff, the evidentiary problem associated with these statements is an intractable one.

FRE 801(d)(2)(D) provides that "[a] statement is not hearsay if—[t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R.Evid. 801(d)(2)(D). "In order for a statement to constitute a party admission, however, the proponent for admission must produce independent evidence showing that the scope of the declarant's authority included the matters discussed in the alleged conversations." *Hassman v. Caldera*, 2000 WL 1186984, *2, 229 F.3d 1142 (4th Cir. Aug. 22, 2000), *citing Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613,

619–20 (4th Cir.1991). Therefore, in the context of a Title VII employment discrimination case, FRE 801(d)(2)(D) requires the statement's proponent to demonstrate that the scope of the declarant's authority included matters related to the employment action at issue. *Compare Hassman*, 2000 WL 1186984, at *2 (summary judgment for defendant affirmed where district court properly excluded hearsay evidence regarding statement by plaintiff's supervisor because plaintiff failed to produce evidence that the supervisor's authority extended to plaintiff's employment), *with Cline v. Roadway Express, Inc.*, 689 F.2d 481, 488 (4th Cir.1982) (testimony that certain managers at meetings indicated their understanding that the defendant company's policy was to replace older workers with younger ones properly admitted under FRE 801(d)(2)(D) because implementation of the discriminatory policy was delegated to the managers).

In this case, Ms. Parker's testimony regarding statements allegedly made by Messrs. Hudson, Whitney, and Bunch is not admissible as nonhearsay under FRE 801(d)(2)(D) because Ms. Parker has not established that the recall decisions at issue were within the scope of these individual's authority. On the contrary, Plaintiff has admitted that Mr. Shoemaker possessed the sole authority to decide who would be recalled. Therefore, Ms. Parker's recollection of statements allegedly made by Messrs. Hudson, Whitney, and Bunch would not be admissible at trial and, accordingly, cannot create a material issue of fact sufficient to defeat Defendant's motion for summary judgment.

---

**4.** On the contrary, Mr. Hudson has filed an affidavit in which he avers that, "I *never* told Ms. Parker that Mr. Shoemaker did not want her to be recalled because she had filed sexual harassment charges against a supervisor, or that there were not any problems in the yard until she came along." Defendant's Ex. 7, at ¶ 4 (emphasis in original). Mr. Shoemaker avers that "I never told *anyone* that I wanted to get rid of Ms. Parker in reprisal or retaliation for her EEO complaint(s)." Shoemaker Aff., ¶ 53 (emphasis in original).

### b. Mr. Shoemaker's Animus Against Plaintiff as Demonstrated by his Reaction to the Alleged Assault Against Her

■ Ms. Parker argues that Mr. Shoemaker's personal animus against her was demonstrated when he failed to protect Plaintiff following an attack against her by a fellow employee. Ms. Parker alleges that, sometime in 1993, a co-worker named John Meadows tried to "bash [her] head in with a piece of pipe" after Ms. Parker had traveled down a set of steps near his work space. Ms. Parker asserts that Mr. Shoemaker failed to take any action against Mr. Meadows and that he stated that the assault was Plaintiff's own fault because she had brought sexual harassment charges and should not have come down the steps when she did. Mr. Shoemaker avers that, while Ms. Parker was frequently involved in verbal altercations with her co-workers, no one ever made an allegation to him that Ms. Parker had been physically attacked.

Even construing the evidence in the light most favorable to the Plaintiff, this incident is, at most, weak evidence that the badge system employed by Mr. Shoemaker was pretextual. Plaintiff has failed to demonstrate a connection between this incident and the Defendant's alleged discrimination against the Plaintiff on the basis of her sex during the recall process. In other words, even if the incident occurred and Mr. Shoemaker reacted in the manner alleged, these occurrences fall far short of establishing that Mr. Shoemaker's recall decisions were motivated by prohibited gender considerations. This incident, therefore, is insufficient to permit a reasonable jury to find that Plaintiff was not recalled due to her sex.

### c. Discrepancy Between Mr. Shoemaker's Affidavits

Plaintiff argues that the integrity of the recall process as well as Mr. Shoemaker's credibility are called into question by alleged discrepancies between the affidavit Mr. Shoemaker filed in support of Defendant's summary judgment motion and a handwritten affidavit he executed on April 13, 1995 ("1995 Affidavit"). In the 1995 Affidavit, Mr. Shoemaker stated that, in December 1993, he recalled a total of 35 Grade 10 and Grade 8 pipefitters, approximately half of whom were Grade 8 pipefitters. In Mr. Shoemaker's affidavit in support of the Defendant's motion for summary judgment, he avers that, on this occasion, he recalled three Grade 10 pipefitters, all of whom had badge numbers lower than the Plaintiff's. Mr. Shoemaker asserts that the apparent discrepancy between the two statements is explained by the fact that his description of "recalled" Grade 10 pipefitters in the 1995 Affidavit included the three recalled Grade 10 pipefitters as well as eight pipefitters who were already in in-pay status, for a total of eleven Grade 10 pipefitters.

The alleged discrepancy between Mr. Shoemaker's two sworn statements does not support the Plaintiff's position that the badge system that Mr. Shoemaker implemented was a pretext for sex discrimination. Even if there is some inconsistency between Mr. Shoemaker's sworn statements, Plaintiff has offered no evidence that the eight Grade 10 pipefitters at issue were actually recalled in November 1993 and that they possessed higher badge numbers than the Plaintiff's. On the contrary, the evidence establishes that three Grade 10 pipefitters were recalled in November or December 1993 and that each of them possessed a lower badge number than the Plaintiff. Whatever inference, if any, one might draw from the alleged discrepancy is not adequate to create a material issue of fact with respect to the pretext issue.

### d. Pipefitters with Lower Badge Numbers Allegedly Hired After Ms. Parker

During the hearing on Defendant's motion for summary judgment, Plaintiff argued that a document submitted in support of the Defendant's motion demonstrates that three of the Grade 10 pipefitters recalled in November 1993 possessed lower badge numbers than that of the Plaintiff's even though each of those individuals had been hired by the NNS *after* the Plaintiff had been. Plaintiff's interpretation of this document, if accurate, would tend to undermine the neutrality of the rationale behind Mr. Shoemaker's recall decisions. Plaintiff would then be in a position to argue that, in the absence of some neutral, nondiscriminatory criteria for determining which pipefitters would be recalled, a reasonable jury could infer that Mr. Shoemaker's recall decisions were influenced by other factors, including consideration of the Plaintiff's sex.

It is undisputed that Plaintiff was hired at the NNS on March 16, 1992. Referring to a document attached to Mr. Shoemaker's supplemental affidavit, which identifies the eleven Grade 10 pipefitters working in Shop 56 in November 1993, Plaintiff argues that three of the pipefitters included on the list had lower badge numbers than the Plaintiff even though they were hired after she was. The document at issue lists eighteen Grade 10 pipefitters. The eleven of these pipefitters who were actively employed at NNS in November 1993 have handwritten numbers next to their names. Other information in this document includes each pipefitter's badge number and "EFF DATE," which Plaintiff interprets to be the pipefitter's date of hire. During oral argument, Plaintiff identified the following Grade 10 pipefitters and their EFF DATE: R.O. Williams, March 23, 1992;

R.E. Manning, March 23, 1992; and D.R. Lindsay, March 8, 1993.

Plaintiff has misconstrued this document. Plaintiff assumes the EFF DATE column in the document refers to the date on which the individual employee was hired. While this may be true in some cases—for instance, the EFF DATE and date of hire for Ms. Parker, March 16, 1992, appear to be identical—the evidence shows that the EFF DATE does not always correspond with the date on which a pipefitter was hired. For example, according to the affidavit of Lawrence B. Austin, a personnel management specialist at NNS, Mr. Lindsay was hired at the NNS on January 13, 1992 even though his EFF DATE is listed as March 8, 1993. Mr. Lindsay was one of the pipefitters recalled in November 1993, and his badge number is indeed lower than the Plaintiff's. Although there is no evidence as to the precise meaning of the EFF DATE designation on this document, it is clear that this term is not necessarily synonymous with the date of a pipefitter's hire at the NNS. Therefore, this document fails to establish that the badge numbers did not actually reflect the sequence in which pipefitters were hired. Accordingly, the document does not give rise to an inference that Defendant's proffered reason for declining to recall the Plaintiff to in-pay status is pretextual.

In conclusion, Plaintiff has failed to offer evidence that would permit a reasonable jury to disbelieve the Defendant's proffered explanation that the Plaintiff was not recalled due to her relative badge number rather than her sex. Defendant has been consistent in its explanation that its recall decisions with respect to Grade 10 pipefitters were based solely on the relative badge numbers of pipefitters, and this explanation is supported by ample evidence. *Cf., EEOC v. Sears Roebuck and Co.,* 243

F.3d 846, 853 (4th Cir.2001) (summary judgment not appropriate because, due to the several inconsistent justifications offered by the defendant at different times for its failure to hire the plaintiff, sufficient evidence existed from which a factfinder could conclude that defendant's final asserted justification was false).

### B. Ms. Parker's Retaliation Claim

Title VII also makes it "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he opposed any practice made an unlawful employment practice by this subchapter, or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "To state a prima facie case of retaliation, a plaintiff must show that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Beall v. Abbott Laboratories*, 130 F.3d 614, 619 (4th Cir. 1997). "Once this is shown, the burden is on the employer to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." *Id.* "The plaintiff must then demonstrate that the employer's reason was mere pretext for retaliation." *Id.* Thus, as the case law makes clear, the pretext analysis applicable to Ms. Parker's sex discrimination claim is essentially the same analysis to be applied to her retaliation claim.

The Navy argues that Ms. Parker has failed to produce evidence establishing a causal connection between Ms. Parker's filing of her EEOC complaint and Mr. Shoemaker's decisions not to recall her. The Navy's argument with respect to retaliation is essentially the same as its argument with respect to the discrimination claim—*i.e.*, that Plaintiff's protected activity did not cause the Navy to decline to recall her because the recall decision was based solely on badge numbers.

The Court finds that the Plaintiff has failed to produce sufficient evidence with respect to the causation element of a *prima facie* retaliation claim to permit her claim to survive summary judgment. For the reasons discussed above, there is no material issue of fact regarding the basis for Mr. Shoemaker's recall decision. Defendant has established that NNS recalled pipefitters based solely on their relative badge numbers. Plaintiff has failed to offer evidence from which a reasonable jury could find that Mr. Shoemaker's decision not to recall the Plaintiff turned on any consideration other than her badge number. Therefore, summary judgment with respect to Plaintiff's retaliation claim is warranted.[5]

### III. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED.

The Clerk is **REQUESTED** to send copies of this Order and Opinion to counsel for the Plaintiff and to the United States Attorney's Office in Norfolk, Virginia.

It is so **ORDERED**.

---

5. The same result would be reached if, rather than finding that the Plaintiff failed to establish a *prima facie* case of retaliation, the Court engaged in the *McDonnell Douglas* burden shifting analysis. In other words, Plaintiff has offered no evidence to demonstrate that the NNS's justification for declining to recall her to in-pay status was pretextual and that the actual purpose underlying that action was retaliatory.