67 F.3d 1137
 69 Fair Empl.Prac.Cas. (BNA) 111,
67 Empl. Prac. Dec. P 43,751
Charles J. FULLER, Jr., Plaintiff-Appellant,
v.
Kennard L. PHIPPS, Sheriff, Montgomery County Sheriff's
Office, Defendant-Appellee.
 No. 95-1036.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 29, 1995.
Decided Oct. 25, 1995.
 
 ARGUED: Terry N. Grimes, King, Fulghum, Snead, Nixon & Grimes, P.C., Roanoke, Virginia, for Appellant. William Fain Rutherford, Jr., Woods, Rogers & Hazlegrove, Roanoke, Virginia, for Appellee. ON BRIEF: Frank K. Friedman, Todd A. Leeson, Woods, Rogers & Hazlegrove, Roanoke, Virginia, for Appellee.
 Before WILKINSON, WILLIAMS, and MOTZ, Circuit Judges.
 Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge WILLIAMS and Judge MOTZ joined.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 This case requires us to assess the propriety of the district court's jury instructions in an employment discrimination pretext case. Appellant Charles J. Fuller, an African American, brought a discrimination claim under 42 U.S.C. Sec. 1981 and Title VII of the Civil Rights Act, 42 U.S.C. Sec. 2000e et seq., alleging that Sheriff Kennard L. Phipps' failure to hire him as a correctional officer was based on Fuller's race. Phipps responded that his hiring decision was based solely on nondiscriminatory reasons. The jury returned a verdict for Sheriff Phipps.
 
 
 2
 On appeal, Fuller challenges the district court's jury instructions, contending that he should have received a different instruction based on Section 107 of the Civil Rights Act of 1991. His challenge fails for two reasons. First, the instruction he seeks is available only in mixed-motive cases; and second, the instruction he received, when judged in its entirety, is acceptable in pretext cases such as this one. Accordingly, we affirm the jury's verdict.
 
 I.
 
 3
 In January, 1992, Fuller applied for a position as a correctional officer in the Montgomery County Sheriff's Department. By the end of 1992, three temporary positions became available. After considering several candidates, including Fuller, Sheriff Phipps chose three other individuals. Fuller then brought suit, alleging racial discrimination in the refusal to hire. The case was tried to a jury. The district judge instructed the jury as follows:
 
 
 4
 In determining whether the Plaintiff Fuller is entitled to recover any damages, you must decide one issue, whether Fuller has proved by a preponderance of the evidence that his race was the determinative factor in Defendant Phipps not rehiring him.
 
 
 5
 In other words, for Fuller to recover, he must prove by the preponderance of the evidence that but for the fact that he is black he would have been reappointed by Phipps.
 
 
 6
 If Phipps chose not to hire Fuller for any other reason, then Fuller cannot recover, and you must find for Phipps.
 
 
 7
 If, however, you find that race was a determinative factor in Fuller not being hired, you must consider the issue of damages.
 
 
 8
 Fuller objected to this charge, claiming that he was entitled to an instruction under Section 107 of the Civil Rights Act of 1991, which reads: "an unlawful employment practice is established when the complaining party demonstrates that race ... was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. Sec. 2000e-2(m). The district judge disagreed. In his view, Section 107 was meant to apply only in mixed-motive cases, not in pretext cases such as this one. The jury then returned a verdict for Sheriff Phipps.
 
 II.
 
 9
 Fuller appeals the refusal of the district court to give his requested instruction. We think, however, that the refusal to give a mixed-motive instruction in this typical pretext case was proper.
 
 
 10
 Employment discrimination law recognizes an important distinction between mixed-motive and pretext cases. Price Waterhouse v. Hopkins, 490 U.S. 228, 247 n. 12, 109 S.Ct. 1775, 1789 n. 12, 104 L.Ed.2d 268 (1989) (plurality opinion); see Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 522 (3d Cir.1992) ("Intentional discrimination in employment cases fall within one of two categories: 'pretext' cases and 'mixed-motives' cases."), cert. denied, --- U.S. ----, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993); Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1180 (2d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The distinction is critical, because plaintiffs enjoy more favorable standards of liability in mixed-motive cases, and this is even more so after the Civil Rights Act of 1991.
 
 
 11
 Pretext cases represent the typical disparate treatment action. They take their name from the analysis developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and refined in St. Mary's Honor Ctr. v. Hicks, --- U.S. ----, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In pretext cases, the plaintiff seeks to prove that the defendant's proffered non-racial reason for an adverse employment action was, in reality, a pretext for a racially motivated decision. Once the parties satisfy their relatively modest obligations under the now familiar McDonnell Douglas/ Burdine framework for producing evidence, see Burdine, 450 U.S. at 252-56, 101 S.Ct. at 1093-95, "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' because of his race." Hicks, --- U.S. at ----, 113 S.Ct. at 2749 (quoting Burdine, 450 U.S. at 253, 101 S.Ct. at 1093). Throughout, the plaintiff retains the ultimate burden of persuasion. Id. Most discrimination cases are pretext cases and will fall within this traditional McDonnell Douglas/ Burdine framework.
 
 
 12
 By contrast, if plaintiffs can present sufficiently direct evidence of discrimination, they qualify for the more advantageous standards of liability applicable in mixed-motive cases. Originally, Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), established the proper inquiry in mixed-motive cases. Under the Price Waterhouse framework, if a plaintiff satisfied the evidentiary threshold necessary to obtain mixed-motive treatment, he became entitled to a shift in the burden of persuasion: The employer could then avoid liability only by demonstrating that it would have reached the same decision absent any discrimination. Id. at 258, 109 S.Ct. at 1794-95 (plurality opinion); id. at 259-60, 109 S.Ct. at 1795-96 (White, J., concurring); id. at 276, 109 S.Ct. at 1804 (O'Connor, J., concurring).
 
 
 13
 The Civil Rights Act of 1991 modified the Price Waterhouse scheme, making mixed-motive treatment more favorable to plaintiffs. Under Section 107 of the Act, an employer can no longer avoid liability by proving that it would have made the same decision for nondiscriminatory reasons. Instead, liability now attaches whenever race "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. Sec. 2000e-2(m).
 
 
 14
 Thus, employers now violate the Act when race plays an actual role in an employment decision, regardless of other considerations that may independently explain the outcome. See Preston v. Virginia ex rel. New River Community Coll., 31 F.3d 203, 207 (4th Cir.1994). Proof by the employer that it would have reached the same determination without any discriminatory animus does, however, limit the remedies available to the plaintiff.[1] See Russell v. Microdyne Corp., 65 F.3d 1229, 1237 (4th Cir.1995).
 
 
 15
 To earn a mixed-motive instruction in accordance with the standards set forth in Section 107, a plaintiff must satisfy the evidentiary burden necessary to make out a mixed-motive case. This requires "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion." Price Waterhouse, 490 U.S. at 277, 109 S.Ct. at 1805 (O'Connor, J., concurring); see Wilson v. Firestone Tire & Rubber, 932 F.2d 510, 514 (6th Cir.1991); Jackson v. Harvard Univ., 900 F.2d 464, 467 (1st Cir.), cert. denied, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990). Moreover, "[n]ot all evidence that is probative of discrimination will entitle the plaintiff to a [mixed-motive] charge." Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 181 (2d Cir.1992). Otherwise, any plaintiff who is able to establish a prima facie showing in a pretext case would qualify for a mixed-motive instruction, conflating the two categories of cases and subverting the Supreme Court's efforts to distinguish the two theories. Hook v. Ernst & Young, 28 F.3d 366, 374-75 (3d Cir.1994); Schleiniger v. Des Moines Water Works, 925 F.2d 1100, 1101 (8th Cir.1991) ("Simply because a discriminatory reason might be inferred from a prima facie case does not mean that a mixed motive case exists."). What is required instead is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision. See Ostrowski, 968 F.2d at 182; Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1096 (3d Cir.1995); Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir.1993).
 
 
 16
 Whether a plaintiff has satisfied this evidentiary threshold is a decision for the district court after it has reviewed the evidence.[2] Price Waterhouse, 490 U.S. at 247 n. 12, 109 S.Ct. at 1789 n. 12 (plurality opinion); id. at 278-79, 109 S.Ct. at 1805-06 (O'Connor, J., concurring). If so, the plaintiff is entitled to mixed-motive treatment. If not, the plaintiff must prevail under the standards that apply in pretext cases. See Radabaugh, 997 F.2d at 448. Thus, whether a case is a pretext or mixed-motive case ultimately hinges on the strength of the evidence establishing discrimination.[3] See Starceski, 54 F.3d at 1097 (concluding that "the distinction between a Price Waterhouse and a McDonnell Douglas/ Burdine case lies in the kind of proof the employee produces on the issue of bias").
 
 
 17
 Here, Fuller failed to make out a mixed-motive case. Fuller's allegations of discrimination focus on three items of evidence. First, he identifies statistics purporting to show that the Montgomery County Sheriff's Office hires few black employees. Second, he suggests that he was more qualified than the individuals chosen by Sheriff Phipps. Third, he alleges that he was treated differently in the interviewing process, specifically by being asked to think over the consequences of giving up the permanent position he already held in favor of one of the temporary openings available in Phipps' office.
 
 
 18
 Sheriff Phipps produced substantial evidence disputing each of these allegations, which would itself justify a conclusion that Fuller failed to qualify for a mixed-motive instruction. Moreover, even if believed, Fuller's allegations do not involve the sort of direct evidence that is necessary to establish a mixed-motive case. His statistical evidence does not suffice, because statistical evidence by nature does not merit a mixed-motive charge. Ostrowski, 968 F.2d at 182. The same is true of his evidence concerning his relative qualifications for the position; such evidence is an issue in virtually every discrimination case. Id. Finally, even if Fuller was treated differently in his interview, there is no evidence demonstrating that this was on account of his race--the allegation consequently does not directly reflect a discriminatory attitude. In fact, requesting that Fuller think over the ramifications of accepting a temporary position seems more to demonstrate a concern for Fuller than any discriminatory animus against him. In short, Fuller's evidence is a far cry from the documented prejudice that triggered mixed-motive treatment in Price Waterhouse: statements by persons involved in the decisional process describing the plaintiff as "macho" and as "overcompensat[ing] for being a woman," and urging her to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." Price Waterhouse, 490 U.S. at 235, 109 S.Ct. at 1782 (plurality opinion).
 
 
 19
 The district court was thus right to treat this case as an ordinary pretext case. Fuller has misconstrued the scope of Section 107 when he seeks an instruction under that provision: Section 107 was intended to benefit plaintiffs in mixed-motive cases; it has nothing to say about the analysis in pretext cases such as this one. The Supreme Court has indicated as much, observing that Section 107 "responds to Price Waterhouse ... by setting forth standards applicable in 'mixed motive' cases." Landgraf v. USI Film Products, --- U.S. ----, ---- - ----, 114 S.Ct. 1483, 1489-90, 128 L.Ed.2d 229 (1994). See also Chenault v. U.S. Postal Service, 37 F.3d 535, 536 (9th Cir.1994) (remarking that "Section 107 ... creates a new framework for analyzing mixed-motive discrimination claims"); Washington v. Garrett, 10 F.3d 1421, 1432 n. 15 (9th Cir.1993) (stating that the "Civil Rights Act of 1991 modified ... Price Waterhouse as to when a plaintiff is entitled to relief in a mixed motive case"). Moreover, the language of Section 107 contemplates a mixed-motive setting, specifically referring to situations in which the plaintiff demonstrates that an illicit consideration has influenced the employment decision and in which other factors may also have played a role. See 42 U.S.C. Sec. 2000e-2(m). And the legislative history makes evident that Congress sought to alter the standards of liability in mixed-motive cases. See H.R.Rep. No. 102-40(I), 102d Cong., 1st Sess. 45, 48-49 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 583, 586-87. Consequently, only those plaintiffs who satisfy the evidentiary burden entitling them to mixed-motive treatment can qualify for an instruction under Section 107. Fuller, plainly, is not such a plaintiff.
 
 III.
 
 20
 Fuller also alleges that the jury instructions were insufficient even for a pretext case. We disagree. When evaluated in their entirety, the district court's charges fairly placed before the jury the dispositive question of whether race was a determinative factor in the adverse employment decision. Moreover, the evidence plainly supports the jury's conclusion that Sheriff Phipps' hiring decision was based on factors other than Fuller's race.
 
 
 21
 "It is not the appellate function to pick myopic fault with trial instructions." Nelson v. Green Ford, Inc., 788 F.2d 205, 209 (4th Cir.1986). Rather, the appropriate inquiry is whether "the charge in its totality sufficiently focused the eye of the jury on the finding it was to make." Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1137 (4th Cir.1988). The district court's instructions here do not run afoul of this standard.
 
 
 22
 The court's closing instruction to the jury was to determine whether "race was a determinative factor in Fuller not being hired." This charge was appropriate. In Hazen Paper Co. v. Biggins, --- U.S. ----, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Supreme Court used very similar language in establishing the proper inquiry in pretext cases, explaining that "a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in [the decisionmaking] process and had a determinative influence on the outcome."[4] Id. at ----, 113 S.Ct. at 1706 (emphasis added); see Miller v. CIGNA Corp., 47 F.3d 586, 595-96 (3d Cir.1995) (en banc) (concluding that the Hazen Paper standard represents the governing standard in pretext cases).
 
 
 23
 Having adequately apprised the jury of the appropriate standard, the instructions need not have gone further. Simple instructions are normally to be preferred, in order not to "inject needless complexity and potential confusion where simplicity is far more appropriate." Mullen, 853 F.2d at 1138. Though the district court provided additional instructions here, none of them compel reversal. The court also directed the jury to assess whether Fuller had established that "but for the fact that he is black he would have been reappointed by Phipps." This charge essentially restates in different language the court's unobjectionable "a determinative factor" instruction. See Miller, 47 F.3d at 595-96 (equating a "but for" standard with Hazen Paper 's "a determinative influence" instruction); EEOC v. Clay Printing Co., 955 F.2d 936, 940-41 (4th Cir.1992) (suggesting that a "but for" instruction is synonymous with a charge focusing on "a determining factor"). Although perhaps superfluous here, the "but for" instruction is an accurate one in pretext cases.
 
 
 24
 The court also directed the jury to determine whether race was "the determinative factor" in Sheriff Phipps' hiring decision, and instructed that Fuller could not recover if "Phipps chose not to hire Fuller for any other reason." When examined in isolation, these charges might be construed to require erroneously that race must have been the sole decisional factor. See Price Waterhouse, 490 U.S. at 241, 109 S.Ct. at 1785-86 (plurality opinion); id. at 259, 109 S.Ct. at 1795 (White, J., concurring); id. at 284, 109 S.Ct. at 1808 (Kennedy, J., dissenting). But these statements should not be considered in artificial isolation, for jury instructions "must be judged in the 'context of the overall charge,' " Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 420, 105 S.Ct. 2743, 2755, 86 L.Ed.2d 321 (1985) (citing Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)), and should be evaluated in their entirety. Spartanburg County Sch. Dist. Seven v. National Gypsum Co., 805 F.2d 1148, 1150 (4th Cir.1986). When viewed as a whole, the district judge's instructions do not rise to the level of reversible error--they plainly put before the jury the appropriate standards of liability in a pretext case. See Smith v. Great American Restaurants, Inc., 969 F.2d 430, 436-37 (7th Cir.1992) (upholding jury instructions in age discrimination case where language which seemed erroneous in isolation was sandwiched between appropriate charges).
 
 
 25
 Here the evidence supports the view that any instructional error was harmless, see Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1296 (4th Cir.1995), and that Fuller's race had nothing to do with Sheriff Phipps' hiring decision. Phipps' overriding concern was to avoid filling temporary openings with individuals who risked relinquishing permanent positions they held elsewhere. There was testimony that all the hired applicants received warnings about the temporary nature of the vacancies. Moreover, none of the three individuals chosen by Sheriff Phipps faced the danger of losing a full-time permanent position--two of the three were unemployed at the time, and the third was working for his father in a position to which he could easily return. Fuller, on the other hand, held a permanent position in the Roanoke County Sheriff's Office, a factor which was of considerable concern to Sheriff Phipps.
 
 
 26
 The evidence also supports other nondiscriminatory rationales for Sheriff Phipps' decision not to hire Fuller. Fuller had twice before resigned from employment at the Montgomery County Sheriff's Office after relatively short stints, calling into question his commitment to the department. Also, Fuller had on one occasion used abusive language in lodging a noise complaint with the Sheriff's Office, causing Sheriff Phipps to doubt Fuller's sense of judgment.
 
 
 27
 Phipps' interactions with Fuller also manifest the lack of any discriminatory animus. Soon after Sheriff Phipps was elected in November, 1991, Fuller contacted Phipps to express an interest in working in the Montgomery County Sheriff's Office, and continued to communicate with Phipps throughout 1992. Phipps advised Fuller to stay in touch, and that he would inform Fuller of any opening as soon as it became available. In December, 1991, Fuller visited Phipps at his home, and the two of them had what both individuals characterize as a cordial conversation, during which Phipps reiterated that he would contact Fuller when an opening arose. When the three temporary positions became available in late 1992, Fuller was the first person notified by Sheriff Phipps, and Phipps promptly offered Fuller an interview. Throughout, Sheriff Phipps seems to have treated Fuller without regard to his race.
 
 IV.
 
 28
 There simply is no reason in this case to disturb the jury's verdict. The judgment is hereby
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 This is accomplished through the following provision:
 On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--
 (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
 (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).
 42 U.S.C. Sec. 2000e-5(g)(2)(B).
 
 
 [2]
 As such, a plaintiff need not decide at the outset whether to classify his case as a "pretext" or a "mixed-motive" case. Instead, the district judge makes this determination after evaluating the evidence, and instructs the jury accordingly. See Armbruster v. Unisys Corp., 32 F.3d 768, 781 n. 17 (3d Cir.1994) (concluding that "an employee may present his case under both theories and the district court must then decide whether one or both theories properly apply at some point in the proceedings prior to instructing the jury")
 
 
 [3]
 In this light, the terms "pretext" and "mixed-motive" are somewhat misleading. The distinction does not depend on whether single or multiple motives inspired an employment decision: Pretext cases may often involve situations in which the record suggests that both legitimate and illegitimate motives caused the employment decision. See Miller v. CIGNA Corp., 47 F.3d 586, 597 (3d Cir.1995) (en banc). The Supreme Court's ruling in St. Mary's Honor Ctr. v. Hicks, --- U.S. ----, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), makes this evident. Miller, 47 F.3d at 597 & n. 9 (noting that the "term of art 'mixed motives' is ... misleading because it describes only a small subset of all employment discrimination cases in which the employer may have had more than one motive")
 
 
 [4]
 While Hazen Paper involved a claim brought under Age Discrimination in Employment Act (ADEA), that statute and Title VII contain directly analogous provisions assigning liability. As a result, where appropriate, the standards that govern ADEA claims are interchangeable with the standards that define Title VII claims. See Armbruster v. Unisys Corp., 32 F.3d 768, 777 n. 10 (3d Cir.1994)