**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SALLY W. DREW; JUDY MAYO,
<u>Plaintiffs-Appellants,</u>

v.                                              No. 95-3128

RICOH CORPORATION,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Chief Judge.
(CA-95-269-A)

Argued: January 29, 1997

Decided: March 31, 1997

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Vicki Greene Golden, CASHDAN & GOLDEN, Wash-
ington, D.C., for Appellants. Joel L. Finger, ROBERTS & FINGER,
L.L.P., New York, New York, for Appellee. **ON BRIEF:** Michael G.
Kane, CASHDAN & GOLDEN, Washington, D.C., for Appellants.
Jean L. Schmidt, ROBERTS & FINGER, L.L.P., New York, New
York, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendant-Appellee Ricoh Corporation ("Ricoh") manufactures
and sells various types of office equipment, including digital
facsimile
("fax") systems. Plaintiffs-Appellants Sally Drew and Judy Mayo
(collectively, the "Plaintiffs") worked in Ricoh's Washington, D.C.
branch office (the "D.C. branch") as sales account executives.

The D.C. branch is currently divided into three sales divisions:
commercial and federal government copier sales, commercial fax
sales, and federal government fax sales. The federal government fax
sales division sells "Securefax" machines and regular commercial
fax
machines to agencies of the federal government and to the primary
federal contractors to those agencies (the "prime contractors").
Securefax machines connect to government encryption equipment and
ensure the security of fax transmissions. Commercial fax machines
do
not have this capability. Ricoh Securefax machines cost, on
average,
two to four times more than Ricoh commercial fax machines.

Prior to April 1990, the federal government fax sales division in
the
D.C. branch consisted of two separate departments: the Securefax
sales department and the civil government sales department. The
Securefax sales department sold Ricoh Securefax machines and com-
mercial fax machines to Department of Defense ("DOD") agencies,
such as the Army, Navy, and Air Force (the "DOD accounts"). The
Securefax sales department also sold Securefax machines to prime
contractors. The civil government sales department, where the Plain-
tiffs worked, sold Securefax machines and commercial fax machines
to civil agencies of the federal government (the"civil agency
accounts"). Account executives in the civil government sales depart-
ment sold exclusively to civil government agencies and did not sell
to DOD agencies. The civil government sales account executives
received the same base salary and commission rates as the Securefax

2

sales account executives. However, because Securefax machines cost more than commercial fax machines, and because DOD agencies purchase more Securefax machines than civil government agencies, account executives in the Securefax sales department earned substantially more in total commissions than the account executives in the civil government sales department.

In April 1990, Ricoh decided to consolidate the civil government sales department and the Securefax sales department into one federal government fax sales division. At that time, there were three account executives in each department: Ted Morgan, Richard Tackels, and Robert Johnson in the Securefax sales department, and David Parrish and the two Plaintiffs in the civil government sales department. The Plaintiffs were the only women account executives in the new consolidated division.

David Shaver served as manager of the entire federal government fax sales division. Shaver laid Parrish off, and Ralph Bennie, the former manager of the civil government sales department, replaced him and became an account executive in the new division. Bennie took over the existing civil agency accounts that had been assigned to Parrish. Tackels, Morgan, and Johnson, the former Securefax sales account executives, continued to service the same DOD accounts that they had served before the consolidation, and the Plaintiffs, the former civil government sales account executives, continued to service the same civil agency accounts.

In March 1991, Ricoh promoted Shaver to D.C. branch director, and Johnson became the new manager of the consolidated federal government fax sales division. When Ricoh promoted Johnson to manager, it required him to give up thirty percent of his accounts in order to attend to his new management responsibilities. Johnson assigned a few of his prime contractor accounts and four of his DOD accounts to Bennie. Even with those DOD accounts, however, Bennie continued to earn less than the Plaintiffs.

In March 1992, Bennie retired. Ricoh hired Martin Hickey in April 1992 to replace Bennie. Ricoh assigned Hickey all of Bennie's accounts, including the four DOD accounts, five of Morgan's and Tackels's DOD accounts, and one of Plaintiff Mayo's civil agency

3

accounts. Hickey, however, earned less than either of the Plaintiffs, even though he had several DOD accounts.

Following the April 1990 merger of the two departments, the Plaintiffs made repeated requests to Shaver and Johnson to receive DOD accounts, pointing out that every male account executive in the division had DOD accounts. Each time, however, Shaver and Johnson refused their requests. In November 1993, the two Plaintiffs, Hickey, and Morgan filed an internal complaint with Ricoh about "account structure." The complaint alleged that the two Plaintiffs and Hickey earned less than the account executives who served DOD accounts. The Plaintiffs also alleged that Ricoh discriminated against them on the basis of sex in assigning the DOD accounts.

In December 1993, Hickey resigned from Ricoh. Ricoh decided not to replace Hickey, and it assigned Hickey's civil agency accounts to the Plaintiffs and his DOD accounts to Johnson. Ricoh contends that the Plaintiffs told the corporation that they did not want Hickey's DOD accounts. The Plaintiffs, however, contend that Ricoh's human resources department promised them that all of Hickey's accounts would be distributed to the Plaintiffs, but that Ricoh refused to do so.

On May 6, 1994, the Plaintiffs filed a sex discrimination charge with the City of Alexandria Office of Human Rights (the "Alexandria Commission"). The Alexandria Commission determined that no probable cause existed to believe that Ricoh discriminated against either of the Plaintiffs on the basis of sex.

On March 1, 1995, the Plaintiffs filed an employment discrimination action against Ricoh under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e to 2000e-17 (West 1994 & Supp. 1996), in the Eastern District of Virginia. They claimed that Ricoh had discriminated against them since 1990 on the basis of sex by refusing to assign them any DOD accounts. The case proceeded to a jury trial on October 10-13, 1995. At the close of all of the evidence, the district court gave the jury a "mixed-motive" instruction.*

_____

*The district court advised the jury, in pertinent part, as follows:

    In order for the plaintiffs . . . to recover on their claim against

Ricoh, . . . plaintiffs must prove that defendant intentionally dis-

4

The verdict form that the court gave to the jury mirrored the court's
instruction. The verdict form provided, in pertinent part:

> 1. Have Plaintiffs proved that plaintiffs' sex was, more
> likely than not, a motivating factor in the decision of Defen-
> dant not to distribute DOD accounts to the Plaintiffs[?]
>
> . . . .
>
> 2. Would Ricoh more likely than not have made the same
> employment decision concerning the Plaintiffs even if
> unlawful motive, namely plaintiffs' sex, was not present?

Ricoh objected to the instruction and verdict form, and it argued that
the court should give a "but for" instruction. The court denied Ricoh's
objection.

_____

> criminated against plaintiff[s]; that is, plaintiffs' sex must be
> proven to have been a motivating factor in defendant's decision
> not to assign the [DOD] accounts to plaintiffs.
>
> . . . In showing the plaintiffs' sex was a motivating factor,
> plaintiffs are not required to prove that sex was the sole motiva-
> tion or even the primary motivation for defendant's decision.
> Plaintiff need[ ] only prove that sex played a part in defendant's
> decision, even though other factors may also have motivated the
> defendant.
>
> If you find from the evidence that sex is more likely than not
> a motivating factor in defendant's employment decision, not to
> assign DOD accounts, you should . . . so indicate on the verdict
> form.
>
> . . . .
>
> If you find the Defendant Ricoh would have more likely than
> not made the same employment decision not to assign DOD
> accounts concerning plaintiffs, even if an unlawful motive was
> not present, you should so indicate on the verdict form.
>
> Plaintiffs . . . must show the defendant Ricoh intentionally dis-
> criminated against them. Plaintiffs, however, are not required to

produce direct evidence of intentional discrimination. Intentional
discrimination may be inferred from the existence of other
facts.

5

The jury returned the verdict form on October 13, 1995 and answered both questions in the affirmative. That is, the jury found that the Plaintiffs' sex was a motivating factor in Ricoh's decision not to assign them DOD accounts, but that Ricoh would have made the same employment decision regardless of their sex. The district court then entered judgment for Ricoh.

The Plaintiffs and Ricoh filed post-trial motions. Ricoh moved for judgment as a matter of law on question one of the verdict form on the ground that substantial evidence did not support a finding that the Plaintiffs' sex was a motivating factor in Ricoh's actions. The Plaintiffs moved to alter or amend the judgment. The Plaintiffs also filed a motion for judgment as a matter of law on question two of the verdict form on the ground that substantial evidence did not support a finding that Ricoh would have made the same employment decision regardless of the Plaintiffs' sex. In the alternative, the Plaintiffs moved for a new trial on question two. Relying on Fuller v. Phipps, 67 F.3d 1137 (4th Cir. 1995), the district court granted Ricoh's motion for judgment as a matter of law on question one of the verdict form and denied all of the Plaintiffs' motions.

We have reviewed all of the arguments that the Plaintiffs raised in their briefs and at oral argument, and we find no reversible error. Accordingly, we affirm for the reasons sufficiently expressed in the district court's thorough opinion. See Drew v. Ricoh Corp., Civil No. 95-269-A (E.D. Va. Nov. 7, 1995).

AFFIRMED