Martha K. BALL, Plaintiff,

v.

WAL–MART STORES, INC., Defendant.

No. CIV. 301CV359–T.

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 30, 2002.

Roger Wade Rizk, Charlotte, NC, for Plaintiff.

Richard L. Rainey, Amy L. Cox, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, for Defendant.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendant's motion for summary judgment, opposed by the Plaintiff. For the reasons stated herein, the Defendant's motion is granted and the action is dismissed.

## I. STATEMENT OF FACTS

Plaintiff, Martha Ball, a white female, worked as a cashier at Wal–Mart store # 1666 in Charlotte, North Carolina, until her employment was terminated on May 22, 2000. **Defendant's Motion for Summary Judgment ["Defendant's Motion"], filed August 30, 2002, at 2.** Plaintiff alleges that she was terminated because of her age and race. Complaint, at 1, 3. When she began working at Wal–Mart on May 7, 1991, she was 63 years old. **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judg-**

ment ["Plaintiff's Memorandum"], filed September 16, 2002, at 1. During her tenure at Wal–Mart, Plaintiff's performance evaluations ranged from exceeding expectations to falling below expectations. The majority of the evaluations, however, showed that she simply met Wal–Mart's expectations. Her supervisors' main concerns were with her lack of interpersonal skills and inappropriate conduct. *See,* **Exhibits 18–22** *attached to* **Exhibit E, Deposition of Martha K. Ball taken March 7, 2002 ["Ball Deposition, Vol. I"],** *attached to* **Defendant's Motion.** In response to some of these concerns, Ball received several "coaching" sessions from her supervisors, mainly to address her rude and inappropriate treatment of customers and co-workers. Pursuant to Wal–Mart policy, Ball wrote her own "Plan of Action" following some of the coaching sessions to deal with the problems. **Exhibits 13–16,** *attached to* **Defendant's Motion.** Ball received at least one "Decision Making Day" which is Wal–Mart's last disciplinary step prior to termination. *Id.,* at **Exhibit 15.**

Plaintiff's termination from Wal–Mart resulted from events that occurred on April 27, 2000. The precise details of what happened that day are unclear. Plaintiff testified in her deposition that while she was working, she spontaneously commented to Joanne Johnson, an African American co-worker, that "it's going to get better." Johnson replied, "when they get rid of the monkeys." Plaintiff responded with something like, "I'm glad you understand." And, Johnson replied, "I'm never going to speak to you again." **Ball Deposition, Vol. I, at 40–41.**

Ball testified that as she was walking to report this incident to James Morgan, the store's assistant manager, her co-workers, identified as Voncile Smith, Cheryl and Melissa, all African American women,

"came at her," but did not physically touch her. *Id.,* at 64. A customer then said to Ball, "they will run you over." *Id.,* at 51. Ball replied that she would take it to management. This particular incident was over very quickly, probably within seconds. *Id.,* at 61.

Defendant relates a different account of what occurred on April 27, 2000. According to Store Manager David Martin, his assistant manager, Morgan, reported that Ball became upset after seeing that cashier Voncile Smith was laughing at a disagreement Ball was having with her Customer Service Manager (CSM), Melissa.[1] **Exhibit C, Affidavit of David Martin,** *attached to* **Defendant's Motion, at 3.** Ball said to Department Manager, Betty George, who is African American, "you need to tell your race how to act." *Id.* Ball went on to say, "Neil [the store co-manager] would not have them up there acting like a bunch of monkeys on the front line." *Id.*

The parties agree that Martin then conducted an investigation into what occurred. Martin held numerous interviews, talking to most employees, including Ball, several times. Ball's account of what happened changed over the course of these interviews, while the other employees' accounts remained consistent. *Id.,* at 4. Further, Martin determined, through interviews of employees and by examining the work schedule, that Joanne Johnson, who Ball alleges made one of the inappropriate statements, was not even working on that particular day. *Id.,* at 4; **Exhibit A,** *attached to* **Martin Affidavit; and Exhibit 6,** *attached to* **Ball Deposition, Vol. I.** After a month-long investigation, Martin concluded that Ball had made a racist comment and had "engag[ed] in serious harassment which created a hostile work environment for Wal–Mart associates and managers alike." Martin Affida-

---

**1.** A CSM is a Customer Service Manager who supervises the cashiers. **Martin Affidavit, at 2.**

vit, at 6. He also believed that she had been disruptive and unprofessional in front of customers. These behaviors are grounds for immediate dismissal under Wal–Mart's disciplinary policy. **Exhibit G,** *attached to* **Defendant's Motion.** After his investigation, Martin terminated Ball's employment with Wal–Mart. Martin Affidavit, at 6.

After her termination, Ball used Wal–Mart's open door policy to speak with Martin's supervisors. She met with Richard Hinkebein, District Manager, both prior to and after her termination, and spoke with Regional Manager, Gwen Cannon, after her termination. *Id.,* at 7; **Exhibit D, Affidavit of Richard Hinkebein,** *attached to* **Defendant's Motion, at 3.** Both Hinkebein and Cannon investigated the situation, talked to other employees, and upheld Martin's decision to terminate Ball. Martin Affidavit, at 7.

Finally, Ball alleges that Lisa McKellar, an assistant manager, told other employees that Wal–Mart was "going to get rid of the older people." **Plaintiff's Memorandum, at 6.** Ball admits that she did not hear McKellar make such a statement and does not know when it was allegedly made. **Ball Deposition Vol. I, at 118.** Rather, Ball claims that another employee, Louise, told Ball that two other employees heard McKellar make this comment and then they related it to Louise, who, in turn, told Ball. *Id.,* at 112–116.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party, here the Plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). By reviewing substantive law, the Court may determine what matters constitute material facts. *Anderson, supra.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* The Defendant, as the moving party, has the initial burden to show a lack of evidence to support the Plaintiff's case. *Shaw, supra* (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If that showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Id. A "mere scintilla of evidence" is not sufficient to defeat summary judgment. Id. Summary judgement is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra,* at 322, 106 S.Ct. 2548. Moreover, in considering the facts of the case for purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Rule 56 further explains the burden on the non-moving party in responding to a motion for summary judgment motion. Under Rule 56(e):

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond,

summary judgment, if appropriate, shall be entered against the adverse party. Fed.R.Civ.P. 56(e). The Fourth Circuit has held that, "[a]s a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991) *(citing, Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548 and *Kipps v. Ewell,* 538 F.2d 564, 566 (4th Cir.1976)).

In the current case, the Plaintiff has not filed any affidavits with her response to Defendant's motion. Ball has realleged facts that contained in the complaint and then relies on both exhibits and testimony from her own deposition. She has not provided any evidence that resulted from discovery nor her own affidavit or affidavits from any witnesses in support of her argument that there are issues of material fact.

Even under these circumstances, however, the granting of summary judgment is not automatic. The moving party still has the burden of showing that summary judgment is appropriate by establishing that there is no genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) **(holding that Rule 56(e) does not modify the burden on the moving party).** Here, Wal–Mart can successfully argue that summary judgment is appropriate by showing that Ball has failed to sufficiently establish any essential element of her claims. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 **(holding summary judgment is appropriate against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").**

## III. DISCUSSION

 The Plaintiff alleges that Wal–Mart terminated her employment because of her race and age, in violation of Title VII and the Age Discrimination in Employment Act (ADEA), respectively. In order to make out a *prima facie* case for either of these claims, a plaintiff may establish direct or indirect evidence of discrimination or may show discrimination under the *McDonnell Douglas* framework of proof. *See, EEOC v. Clay Printing,* 955 F.2d 936, 940 (4th Cir.1992); *see also, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 606–07 (4th Cir.1999) **(discussing the burdens on each side under the two different avenues of proof in discrimination cases).** To establish discrimination using direct and indirect proof, an employee may use "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue" *Tuck v. Henkel Corp.,* 973 F.2d 371, 375 (4th Cir.1992). To overcome a motion for summary judgment, Plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact. *Goldberg v. B. Green & Co., Inc.,* 836 F.2d 845, 848 (4th Cir.1988). Using this method of proof, a successful plaintiff must produce "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir.1995); *see also Burns v. AAF–McQuay, Inc.,* 96 F.3d 728, 731 (4th Cir.1996); *Clay Printing, supra,* at 940–41.

 With regard to Ball's age discrimination claim, Defendant agrees that Plaintiff was protected by the ADEA because she was over 40 years old and that she was terminated from her employment with

Wal–Mart. Defendant, however, claims that Plaintiff has failed to show any evidence that age was a determining factor in the action. This Court agrees.

In her brief, Plaintiff highlights as direct evidence of age discrimination, a comment allegedly made by Wal–Mart assistant manager Lisa McKellar that "we are going to get rid of the older people." **Plaintiff's Memorandum, at 6.** The Plaintiff, however, has failed to supply any affidavits or other evidence supporting this allegation. Ball admits that she did not hear McKellar make this statement, but heard about from another employee. **Ball Deposition Vol. I, at 112–15.** Further, Ball did not report this comment to any manager at Wal–Mart. *Id.,* at 117–18. Even if she had heard this statement, Ball has not provided any evidence that McKellar had any input in the decision to terminate Ball's employment. In order for such a stray remark to be relevant, there must be a nexus between the statement and the adverse employment action. *See Clay Printing Co., supra; see also Douglas v. PHH FleetAmerica Corp.,* 832 F.Supp. 1002 (D.Md.1993) **(noting that for such a nexus to exist, the statement must be made by the decision maker);** *Brinkley, supra,* at 608 **(explaining that an isolated derogatory remark alone is insufficient direct proof of discrimination).** Ball has not even attempted to show this nexus. Further, Ball has provided no other evidence indicating that her termination was based on her age. Her bald speculation that her termination was because of her age is not sufficient to overcome summary judgment.

With regard to Ball's race discrimination claim, Ball has failed to make any showing whatsoever that she was terminated because of her race. In fact, Ball testified at her deposition it was her feeling that she was terminated because Store Manager Martin did not believe her version of events on April 27, 2000, not that she was terminated because of her race. She testified she was fired because of "who [she is]." **Ball Deposition, Vol. I, at 89–90.**[2] She elaborated that she was referring to her good character, her status in the community, and both her husband and son's prestigious jobs. *Id.* Additionally, Ball has asserted that Martin believed the African Amercian employees' account of the April 27 events, rather than her version, because of their race. Ball has failed to support this allegation with any evidence. Without this evidence, Ball's allegation stands alone and is insufficient to meet her burden. *See Williams, supra.*

■ Ball, thus, has failed to make a proper showing to establish direct discrimination based on either race or age. She, therefore, must rely on the burden-shifting framework of *McDonnell Douglas.* Under the *McDonnell Douglas* framework, a plaintiff must first establish: (1) that she is a member of a protected group, in this case age and race; (2) that she was discharged from her employment; (3) that at the time of her termination, she was performing her job at a level that met her employer's legitimate expectations; and (4) that following her termination, she was replaced by someone of comparable qualifications outside of the protected class or that the position remained open. *EEOC v. Western Electric Co., Inc.,* 713 F.2d 1011, 1014 (4th Cir.1983). If a plaintiff successfully makes this showing, then the burden of proof shifts to the defendant to show a legitimate business reason for the decision to terminate the plaintiff's employment. *See, Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff then has

---

2. In the same series of questions, Ball also stated that Martin's disbelief was not because of her age, but again because of "who I am." **Ball Deposition, Vol. I, at 89–90.**

the opportunity to show that the defendant's reason is a pretext for unlawful discrimination. *Id.*

■ In the current case, the Plaintiff has failed to establish a *prima facie* case. While Ball has established through her deposition testimony the first two elements, she has made no showing regarding the third or fourth elements. Under the third element of the *McDonnell Douglas* test, the Plaintiff has the burden of showing that her job performance was meeting her employer's expectations. Plaintiff relies on her past performance evaluations to establish that she was meeting her employer's expectations when she was terminated. Most of these evaluations fall into the general category of "meets expectations." In these evaluations, however, there are concerns about Plaintiff's interpersonal and communication skills, including how she interacts with co-workers and customers.. Ball had been coached for refusing to help customers and for not interacting with co-workers respectfully. *See generally,* **Exhibit G,** *attached to* **Defendant's Motion.** Further, there was a letter from a Wal–Mart customer complaining about Ball's disrespectful treatment and Ball's alleged racist overtones. *Id.* These coachings included a "Decision Making Day," the final step before termination in Wal–Mart's progressive disciplinary scheme. These specific comments on her evaluations and the level of discipline she received indicate that Ball was not meeting all of Wal–Mart's expectations. Ball has failed to provide the Court with any other evidence showing that she was indeed meeting Wal–Mart's expectations.

Ball's termination resulted from the events that occurred on April 27, 2000. While her last formal performance evaluation prior to her termination may have been satisfactory, her behavior on the date in question fell below Wal–Mart's expectations. After a thorough investigation, store manager Martin found that Ball engaged in serious harassment and created a hostile work environment, both of which are grounds for immediate termination in Wal–Mart's disciplinary policy. *Id.* Ball has failed to establish that she was indeed, meeting Wal–Mart's expectations on April 27, 2000, or that Martin's conclusion regarding the events of that day was unreasonable or inaccurate. Ball, therefore, has failed to meet her burden for the third element of the *prima facie* case.

Further, to establish the fourth element of the *prima facie* case, Ball is required to show that the replacement employee Wal–Mart hired for her position was outside of the protected class or that the position remained opened. *See Burdine, supra.* Ball has simply not addressed this element. She has shown no attempt to obtain this information through discovery and has given no reason why this information was not in her brief. Due to this complete absence of evidence, Plaintiff has failed to meet her burden.

Because Plaintiff has failed to establish her *prima facie* case under the first step of the *McDonnell Douglas* framework, it is unnecessary to go through the burden-shifting analysis. Plaintiff has failed to carry her burden to establish direct or indirect evidence of discrimination. She has also failed to establish a *prima facie* case under the *McDonnell Douglas* framework. Her claims, therefore, must be dismissed.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is **ALLOWED,** and this matter is dismissed by way of Judgment filed herewith.

## *JUDGMENT*

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Defendant's motion for summary judgment is **ALLOWED,** and this matter is hereby **DISMISSED WITH PREJUDICE** in its entirety.