UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-2229

SERGEI VOLOCHAYEV,

             Plaintiff – Appellant,

        v.

KATHLEEN SEBELIUS, Secretary, United States Department of
Health and Human Services,

             Defendant – Appellee.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Alexander Williams, Jr., District
Judge.  (8:11-cv-00230-AW)

Argued:  December 5, 2012          Decided:  March 11, 2013

Before MOTZ, KING, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion,
in which Judge Motz and Judge King joined.

**ARGUED:** Morris Eli Fischer, THE LAW OFFICE OF MORRIS E. FISCHER,
LLC, Silver Spring, Maryland, for Appellant.  Larry David Adams,
OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for
Appellee.  **ON BRIEF:** Rod J. Rosenstein, United States Attorney,
Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Sergei Volochayev filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), alleging his employer's discrimination on the basis of national origin and retaliation for engaging in protected activity. He now appeals from a district court order granting summary judgment to his employer, Kathleen Sebelius, Secretary of the United States Department of Health and Human Services ("HHS"). That decision followed a ruling by an Equal Employment Opportunity Commission ("EEOC") Administrative Judge ("AJ"), who similarly found that Volochayev had failed to establish a Title VII violation. Likewise, we conclude that Volochayev cannot make out a prima facie case on either of his claims, and therefore affirm the judgment of the district court.

I.

A.

Volochayev is a male of Russian descent who was employed as a Research Nurse in the Intensive Care Unit ("ICU") of the National Institute of Health ("NIH") Clinical Center from April 2006 until April 2008. Volochayev was removed from his position after an incident prompted ICU Nurse Manager Deborah Kolakowski to order an investigation into his documentation records, revealing a multitude of errors.

2

The events prompting the investigation took place between September 29 and October 1, 2007, when Volochayev was working the night shift and caring for "Patient X," who was under orders to receive a continuous intravenous ("IV") drip of Fentanyl, a powerful controlled narcotic. Over the course of Volochayev's two consecutive night shifts, six separate IV bags containing Patient X's Fentanyl ran dry much more quickly than they were supposed to. Volochayev replaced the depleted bags with new ones and did not promptly report the problem. When he did finally alert his charge nurse, inspections revealed no problems with either the patient or the IV pump, and the pharmacy confirmed that the bags had contained the correct dose.

The charge nurse reported the incident to the ICU's Administrative Coordinator, expressing concern that Volochayev had delayed to self-report the matter. ICU Assistant Nurse Manager Pamela Horwitz then questioned Volochayev about the missing Fentanyl. When he could offer no explanation, Kolakowski instructed Horwitz to investigate Volochayev's Controlled Substance Report forms for the month of September 2007. The records revealed over forty documentation errors relating to the administration of controlled substances. According to testimony at the administrative hearing, although some of these errors may have been commonplace among the ICU

3

nursing staff, the sheer number of Volochayev's errors was abnormal, if not unprecedented.

Per Kolakowski's recommendation, Deputy Chief Nurse Officer Tannia Cartledge issued Volochayev a Notice of Proposed Removal based on the pervasiveness of his misconduct, his knowledge of the procedures in question, his previous subpar performance review, and the potential risk he presented to patients. Volochayev responded through counsel that his supervisors were retaliating against him for complaining about preferential treatment given to certain employees. Chief Nurse Officer Clare Hastings subsequently issued a decision to remove Volochayev from federal service. The decision found that Volochayev had failed to sufficiently account for his numerous errors--raising doubts about his credibility--and found no merit to his allegations of preferential treatment or retaliation.

B.

Following his removal, Volochayev filed a complaint with the Equal Employment Opportunity Office ("EEO"), alleging national origin discrimination and retaliation. HHS responded that Volochayev was fired due not to discrimination or retaliation, but to his failure to meet work expectations.

As evidence of national origin animus among his supervisors, Volochayev claimed that they made various disparaging remarks about Russians, calling them rude,

4

insubordinate, and overly fond of vodka. Volochayev also urged that anti-Russian prejudice could be inferred from HHS's more lenient treatment of two of his colleagues, Mark Pavlick and Carol Wingfield, whose own documentation errors did not prompt investigation or removal. In support of his retaliation claim, Volochayev pointed to a series of February 2007 emails and conversations with his supervisors that he claims was the protected activity that triggered his firing.

Over an eight-month administrative discovery period, Volochayev served a number of interrogatories and document requests and deposed Kolakowski, Cartledge, and Hastings. After a five-day EEO hearing, the AJ ruled in favor of HHS.

Volochayev then brought the instant Title VII action in the United States District Court for the District of Maryland. Pursuant to Federal Rule of Civil Procedure 56(d), Volochayev moved for additional discovery. In an affidavit, he explained that he hoped to obtain, among other materials, the documentation records of other nurses in the ICU, information about the experience levels of other nurses, and information regarding the national origin of his replacement. After reviewing the administrative record, the court denied Volochayev's Rule 56(d) motion, concluding that he had had a full opportunity to conduct discovery at the administrative

5

level. The district court then granted summary judgment to HHS on both Title VII claims. This appeal followed.

## II.

The issues before us are (1) whether the district court abused its discretion by denying Volochayev's Rule 56(d) request for additional discovery, and (2) whether entry of summary judgment in favor of HHS was proper.

### A.

We first consider Volochayev's contention that the district court erred in denying his request for additional discovery. We review a district court's denial of a Rule 56(d) request for abuse of discretion. See Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (discussing earlier version of the rule).

Volochayev claims that the administrative discovery process was insufficient to support the district court's entry of summary judgment and that his request for further discovery should therefore have been granted. As an indication that the administrative process was lacking, Volochayev notes that he was limited to one set of interrogatories. He also complains that he was denied the opportunity to conduct discovery on issues that arose during the hearing before the AJ.

6

Federal Rule of Civil Procedure 56(d) provides that a court "may" allow a party faced with a motion for summary judgment to conduct additional discovery "if [the] nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The denial of additional discovery is appropriate when the materials sought by the requesting party could have been discovered earlier. See CBRE Realty Fin. TRS, LLC v. McCormick, 414 F. App'x 547, 551 (4th Cir. 2011) (unpublished) (citing Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 92 (1st Cir. 1996)).

We find no abuse of discretion in the district court's refusal to allow additional discovery. Contrary to Volochayev's belief, the record produced by the eight-month administrative discovery period and five-day hearing was more than sufficient for the district court to make its summary judgment determination. Despite the procedural limitations of the administrative discovery process, that process gave Volochayev ample opportunity to discover the information he later sought through his Rule 56(d) motion. And nothing that arose during the administrative hearing, in our view, required the court to grant Volochayev's motion.

### B.

We next consider Volochayev's contention that the district court erred in granting summary judgment on his Title VII

discrimination and retaliation claims. We review a district court's decision to grant summary judgment de novo, viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party--here, Volochayev. Pueschel v. Peters, 577 F.3d 558, 563 (4th Cir. 2009). Summary judgment is only appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

1.

An aggrieved employee can prove a Title VII discrimination claim in either of two ways. "First, an employee may utilize ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999) (internal quotations omitted), abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). This evidence must not only reflect a discriminatory attitude, but must also bear directly on the contested employment decision. Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995), abrogated on other grounds by Desert Palace, 539 U.S. 90 (2003).

Volochayev argues that his supervisors' alleged anti-Russian comments constitute direct evidence of HHS's discrimination. We disagree. Even viewing the evidence in Volochayev's favor and assuming the comments were actually made,

8

Volochayev has put forth no evidence that those stray comments had any direct bearing on his firing, as is required under Phipps, 67 F.3d at 1142. Without some closer nexus, we cannot conclude that the remarks raise an inference that Volochayev's firing was motivated by an impermissible basis.

Neither does HHS's more lenient treatment of fellow nurses Mark Pavlick and Carol Wingfield raise an inference of discrimination. As the district court observed, Pavlick's violations occurred over a period of nine months, each dealt with a breach of a different rule, and only one involved controlled substances. Volochayev, on the other hand, committed multiple violations of a single rule concerning controlled substances in a concentrated period, suggesting disregard for the ICU's practices and rules rather than mere negligence on isolated occasions. Wingfield, for her part, was still considered a trainee at the time of her violations, whereas Volochayev had extensive nursing experience and was understandably held to higher standards.

Lacking sufficient direct or circumstantial evidence, Volochayev may nevertheless proceed under a second method of proof: the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, Volochayev may establish a prima facie case of employment discrimination if he can show that (1) he is in a protected class; (2) he suffered

9

an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. Bonds v. Leavitt, 629 F.3d 369, 373 (4th Cir.) (internal quotations omitted), cert. denied, 132 S. Ct. 398 (2011). Once this prima facie showing is made, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802. The burden then shifts back to the plaintiff to show, by a preponderance of the evidence, that the proffered legitimate reason was a pretext for discrimination. Id. at 804.

The district court held that Volochayev had failed to make out a prima facie discrimination case because he could not show that he was performing his job duties at a level that met his employer's legitimate expectations. The court further concluded that even if Volochayev had established a prima facie case, HHS had presented a legitimate, non-pretextual reason for terminating him: his pervasive documentation violations relating to controlled substances.

In Volochayev's view, the district court mishandled the McDonnell Douglas analysis by failing to merge its "legitimate expectations" analysis with the question of pretext. He cites

10

cases from our sister circuits for the proposition that where a plaintiff argues that he has "performed satisfactorily and the employer is lying about the business expectations required for the position, the second prong and the pretext question seemingly merge because the issue is the same--whether the employer is lying." Hague v. Thompson Distrib. Co., 436 F.3d 816, 823 (7th Cir. 2006). Volochayev suggests that by failing to merge these two parts of the analysis, HHS's proffered justification for the firing did not receive proper scrutiny under the burden shifting approach.

Again, we disagree. While we have recognized that the McDonnell framework contains no "impermeable barrier" that prevents the sort of merged analysis Volochayev urges, Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 516 (4th Cir. 2006), we also see no need to insist upon it in every case. Here, the district court fully engaged in the pretext analysis, giving HHS's proffered justification the scrutiny Volochayev complains was lacking. In doing so, the court found that Volochayev's pervasive record of documentation errors constituted a legitimate, nondiscriminatory reason for Volochayev's removal. We concur and conclude that in light of his poor work record, Volochayev cannot show that he was meeting HHS's legitimate business expectations or that his failure to do so was not the true motivation for his firing. Accordingly, we affirm the

11

district court's grant of summary judgment on Volochayev's discrimination claim.

                                 2.

To make out a prima facie showing of retaliation under Title VII, a plaintiff must demonstrate that (1) he engaged in protected activity; (2) he suffered some form of adverse action; and (3) some causal connection existed between the protected activity and the adverse action. Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). The district court held that Volochayev failed to establish both the first and third prongs.

As evidence of protected EEO activity, Volochayev cites a February 2007 conversation and email in which he complained about his supervisors' unprofessional treatment, as well as another alleged email, written with his colleague Jacqueline Cooper's assistance, threatening to file a complaint with the EEO. He further submits that a causal link existed between his complaints and his eventual firing. In Volochayev's view, the long lapse between his February 2007 complaints and his March 2008 removal does not sever the nexus, since he claims the fall 2007 Fentanyl incident was simply the first reasonable opportunity his supervisors had to retaliate against him without drawing suspicion of retaliatory motive.

Although it is true that informal complaints about discriminatory treatment relating to a protected status constitute protected activity under Title VII, Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981), Volochayev has presented no evidence that his February 2007 interactions with his supervisors had anything to do with his protected status. As for the alleged second email threatening EEO action, Volochayev was unable to produce a copy of this email, his supervisors testified that they never received it, and HHS was unable to locate it on its servers. Even when viewing the evidence in the light most favorable to Volochayev, we cannot see how he satisfies the first prong of a prima facie retaliation claim.

Furthermore, even if we assume, arguendo, that Volochayev did engage in protected EEO conduct, we discern no causal link between his February 2007 complaints and his March 2008 removal. There is no evidence that his supervisors were ever aware of Volochayev's intent to file an EEO claim, and the investigation into his removal did not begin until seven months after Volochayev lodged his informal complaint. Meanwhile, the fall 2007 Fentanyl incident, rather than being merely the first reasonable opportunity for his supervisors to retaliate against him, was instead a legitimate, non-pretextual reason for

13

Kolakowski to launch the investigation that ultimately resulted in Volochayev's removal.

Since Volochayev cannot make out a prima facie retaliation claim, we affirm the district court's grant of summary judgment.

## III.

For these reasons, we affirm the district court's judgment.

<u>AFFIRMED</u>

14